THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WYNDHOLME VILLAGE, LLC, et al.,        *

     Plaintiffs and Counter-Defendants    *

     v.                                   *    Civil Action No. L01-3809

NADIF OF WYNDHOLME, LLC, et al.,*

     Defendants and Counter-Plaintiffs  *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**AMENDED** COMPLAINT AND REQUEST FOR JURY TRIAL

Now come the Plaintiffs, Wyndholme Village, LLC, James M. Lancelotta and

Katherine A. Lancelotta, by their attorneys, Howard J. Schulman and Schulman &

Kaufman, LLC, and state:

COUNT I

(Fraud and Breach of Contract)

1.    Wyndholme Village, LLC is a Maryland Limited Liability Company.

Defendant NADIF of Wyndholme, LLC (ANADIF@) is a Florida Limited Liability

Company.  WVI, LLC is a Delaware Limited Liability Company.  Defendant Stuart

ANeil@ Cornelius Fisher is a resident of the State of Florida.  Defendant John R. AJack@

Quinn is a resident of the State of New York, as is Defendant Howard ARusty@

Zukerman.

1

2.     Upon information and belief or, alternatively, the following allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery:  Defendant Fisher holds himself out as a matter of course as the president and chief executive officer of North American Doctors Investment Fund, Inc.  Defendant Fisher holds the North American Doctors Investment Fund out as a major real estate investment trust that has had numerous successful real estate developments, developing, for instance, various Ritz-Carlton Hotels.  As a matter of course, Defendant Fisher  represents that the North American Doctors Investment Fund is a real estate trust under his control and that it has more than $500 million in assets.  Defendants, Fisher and North American Doctors Investment Fund, however, have never completed a construction project and have been sued on numerous occasions for fraud, misappropriation of money and financial misdealings related to their involvement in proposed construction and development projects. Fisher has left a trail of fraud claims, bankruptcies, tax liens, corporate shells and disappointed people through various states. Fisher is a paper pauper without assets in his own name. Fisher has personally declared bankruptcy or placed numerous corporations under his control into bankruptcy and is judgment-proof.  Fisher has been involved in numerous failed construction and development projects such as, Hampton Cove on Long Island, New York, Terra Ceia Isles, Florida, AThe Riviera@, AShipwatch@ in Charles County, Maryland and APort America@ in Prince George=s County, Maryland.  The IRS has tax

2

liens against Fisher for over a million dollars. North American Doctors Investment Fund is a shell that emerged from bankruptcy in 1998. Fisher, for example, induced John W. McTigue, M.D., a Washington eye surgeon, to make Fisher his personal money manager, only to have Fisher misappropriate over $2 million of his money. Fisher has used monies from investors intended for use on would-be construction and development projects to support Fisher=s extravagant and flamboyant lifestyle.

3.     Upon information and belief or, alternatively, the following allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery: Defendant John R. "Jack" Quinn is Defendant Fisher=s business partner in many of Fisher=s projects, including Hampton Cove on Long Island, New York, Terra Ceia Isles, Florida, AThe Riviera@, AShipwatch@ in Charles County, Maryland and APort America@ in Prince George=s County, Maryland. Fisher holds Quinn out as a matter of course as a reputable, successful and knowledgeable real estate developer. Quinn, however, pled guilty to real estate securities fraud and making false financial statements concerning a project known as AGatsby=s Landing@ in Glen Cove, New York. In 1995, a jury found both Fisher and Quinn personally liable for fraud and imposed damages of $1.28 million for the Rivera project, a judgment that still remains uncollected.

4.     Upon information and belief or, alternatively, the following allegations are likely to have evidentiary support after a reasonable opportunity for further

investigation and discovery:  Defendant Zukerman is Fisher=s business partner.  Fisher,

as a matter of course, held Defendant Zukerman out as the Chief Financial Officer of

North American Doctors Investment Fund with particular expertise in real estate

development. Zukerman, an accountant,  has recently pled guilty to tax fraud.

5.    Upon information and belief or, alternatively, the following allegations are

likely to have evidentiary support after a reasonable opportunity for further

investigation and discovery:  Defendants Quinn and Zukerman are/were the agents,

servants and employees of NADIF and WVI, L.C.C.

6.    Plaintiff Wyndholme Village, LLC is the owner of the following parcels of

real property located in Baltimore City: (a) 3.88 acres known as 5205 Frederick

Avenue; (b) 20.89 acres known as 5241 Frederick Avenue; (c) 1.37 acres known as

Lots 18-53, Block 8138J.  Plaintiff Wyndholme Village, LLC has a lease purchase

agreement for 7.687 acres known as 100 South Rock Glen Road  (collectively referred

to as the AProperty@).  On December 5, 1996, the Property was approved by

Baltimore City as a planned-unit development.  The Property is improved by site

improvements such as water, sewer, pavements, curbs, gutters and storm drains. The

development plans provide for seven separate phases.  The fair market value in its Aas

is@ condition is Twelve Million Eight Hundred Ten Thousand Dollars ($12,810,000).

7.    Plaintiff Wyndholme Village, LLC was organized for the purpose of

developing the Property as a retirement community primarily for deaf and hard-of-

hearing seniors.   Wyndholme Village, the name of the proposed development, is the vision of James M. Lancelotta, who had two deaf grandparents.  Lancelotta  organized and is the principal of Wyndholme Village, LLC.  Most of the property had been in the Lancelotta family for generations and is known as the Wyndholme Estate.

8.    As of September 1998, part of the Property was subject to a first lien held by Leeds Federal Savings Bank (ALeeds@) in the approximate amount of Two Million Seven Hundred Twenty-Five Thousand Dollars ($2,725,000); a second lien in favor of Metropolitan Bank and Trust (AMetropolitan@) in the approximate amount of One Million Five Hundred Thousand Dollars ($1,500,000) and a third lien in favor of Tom Iacoboni/Iacoboni Site Specialists, Inc. (AIacoboni@) in the approximate amount of Five Hundred Forty Thousand Dollars ($540,000).

9.    In September 1998, Plaintiff Wyndholme Village, LLC  obtained a binding commitment in the amount of $7.1 million from Cornerstone Private Capital LLC of Denver, Colorado, for the purpose of consolidating all of the existing loans and to provide additional funding for a period of 12 months. In addition, Construction Lending Corporation of America located in Sacramento, California issued a commitment to provide the construction funds. On September 29, 1998, thirteen days prior to the scheduled closing, Cornerstone advised Plaintiff that one of Cornerstone=s senior officers had been terminated as the result of alleged serious financial improprieties and that Cornerstone could no longer live up to its commitment, thereby

5

causing the entire financing package to collapse.

10.    On November 9, 1998, Metropolitan Bank made demand for full payment of its loan, on the ground that the maturity date had passed and thereby the loan was in default.  Metropolitan Bank instituted foreclosure proceedings and scheduled the foreclosure sale for March 17, 1999.   On March 17, 1999, in  order to avoid foreclosure and to prevent the loss of the properties, Plaintiff filed a Voluntary Petition under Chapter 11 of Title 11. Since the filing, the Debtor has remained in possession of its assets and acted as a Debtor-in-Possession, until August 31, 2001, the date upon which the United States Bankruptcy Court for the District of Maryland (Northern Division) entered an order terminating the proceedings.

11.    Beginning in February 1999, Defendant Fisher held himself out publicly to Baltimore community leaders, Baltimore business leaders, Baltimore City and Maryland officials and the media as a successful and wealthy developer who had the financial wherewithal to make good on his promise to them to build a $100 million Ritz-Carlton Hotel on Key Highway in the Baltimore inner harbor area on land known as the Propeller Yard property.  In reliance upon  Fisher=s  promise to develop the Propeller Yard property and build a Ritz-Carlton Hotel, the City and State included the property in the State=s enterprise zone. Fisher contracted for the purchase of the Propeller Yard property.

12.    In June 1999, Defendants approached Plaintiff James M. Lancelotta and

6

represented that they were successful developers and had the financial resources and

strength to fund a loan of millions of dollars to the Plaintiffs for the completion of the

development of the property for the project.  More specifically, Defendants told

Lancelotta that they were the individuals who were developing the inner harbor Ritz-

Carlton and had provided $40 million for the inner harbor Harborview project.

Defendant Fisher told Lancelotta that the Defendants were interested in assisting him

with the development of Wyndholme Village.  Fisher, in the presence of Quinn and

Zukerman, told Lancelotta that the three of them were successful and reputable

developers and were principals of North American Doctors Investment Fund, which

Fisher told Lancelotta had assets in excess of $500 million.  Fisher told Lancelotta that

North American Doctors Investment Fund would be able to obtain the millions of

dollars required to pay off the existing debt and to finance the completion of the

project.  Fisher also told Lancelotta that if NADIF could not obtain financing from a

third party, NADIF had more than enough assets to make the loan itself.  Fisher told

Lancelotta that North American Doctors Investment Fund always operated through

single purpose subsidiaries, which, in this case, would be NADIF.  Fisher described to

Lancelotta his role in North American Doctors Investment Fund and NADIF as that of

being the rainmaker for investment funds, that Quinn was a successful and highly

regarded real estate developer and that Zukerman brought with him particularized

financial expertise in implementing financing  for projects such as Wyndholme.

Nether Fisher, Quinn, nor Zukerman advised Lancelotta of Quinn=s conviction for real estate securities fraud and making false financial statements concerning a real estate project.  Fisher repeated and reiterated these representations and omissions to Curtis C. Coon, Esquire, counsel for Plaintiff Lancelotta, and to Howard A. Rubenstein, Esquire, counsel for Wyndholme Village, LLC in the bankruptcy proceedings.  Fisher promised that NADIF would make an immediate loan of Seven Hundred Fifty Thousand Dollars ($750,000) to Plaintiff Wyndholme Village, LLC for project start-up funds and that NADIF would issue a commitment for construction of Phase I of the project, in exchange for, among other things, a senior or super priority lien on the Property. In reliance on Defendants= representations about their developmental skills and financial wherewithal, Plaintiffs agreed on July 8, 1999 that Plaintiff Wyndholme Village, LLC would seek approval from the Bankruptcy Court for a super priority or senior lien on the Property, a lien that would have priority over the liens of Leeds Federal and Metropolitan on the Property.

13.    On July 9, 1999, Wyndholme Village, LLC filed a Motion for Senior Lien on Property of the Estate Already Subject to Liens in the Bankruptcy Court.  In support of their request for approval of the Bankruptcy Court, Plaintiffs filed the agreement dated July 8, 1999 between  Plaintiff Wyndholme Village, LLC and Defendant NADIF.  A hearing was held on August 4, 1999 in the Bankruptcy Court before the Honorable E. Stephen Derby on the motion, where both Leeds Federal and

8

Metropolitan opposed the Senior Priority Lien.   The hearing was continued until September 21, 1999.

14.     In response to the opposition of Leeds and Metropolitan, Defendant Fisher reiterated his representations about their developmental experience and financial wherewithal to Plaintiffs, Howard A. Rubenstein and Curtis C. Coon.  On or about August 29 and 30, 1999, Defendants repeated and reiterated to Plaintiffs, and Howard A. Rubenstein and Curtis C. Coon, as well as to Mark R. Kivitz, Esquire, counsel for Leeds, that Defendants were successful and reputable developers,  that NADIF had financial resources and strength to fund a loan of millions of dollars to the Plaintiffs for paying off all the existing debt and for the completion of the development of the property for the project and that NADIF  would lend Wyndholme $750,000 secured by a super priority or senior loan, lend James Lancelotta $100,000 and issue a commitment for a $7 million construction loan within 120 days of the Bankruptcy Court=s approval of the super priority or senior loan.   In reliance on Defendants= representations about their developmental skills and financial wherewithal and their pledge to finance the project, Plaintiffs and their counsel agreed that James M. Lancelotta would initially transfer a ten percent ownership in Plaintiff Wyndholme Village, LLC and subsequently a fifty percent ownership interest.  Additionally, in reliance on Defendants= representations about their developmental skills and financial wherewithal and their pledge to finance the project, Plaintiffs and their counsel agreed

that WVI, LLC would pay off Metropolitan, which would become the assignee of

Metropolitan=s rights under its loan, including its lien on the property, and would be

substituted for Metropolitan in the bankruptcy proceedings. Additionally, in reliance on

Defendants= representations about their developmental skills and financial wherewithal

and their pledge to finance the project, Plaintiffs, their counsel and counsel for Leeds

agreed that Plaintiff Wyndholme Village, LLC would seek approval from the

Bankruptcy Court for the senior lien on property based on the revised agreement

dated August 30, 1999.  Based on this revised agreement and the representations of

Defendants= developmental skills and financial wherewithal to its counsel and their

pledge to finance the project, Leeds withdrew its opposition and agreed to the senior

lien. Based on this revised agreement and the representations of Defendants=

development skill and financial wherewithal to its counsel and their pledge to finance

the project, as well as Defendants= involvement in the development of the project,

Plaintiffs, their counsel and counsel for Leeds and WVI, LLC urged the Bankruptcy

Court=s approval of the lien.  In support of this request, Plaintiffs filed an agreement

dated August 30, 1999 between  Plaintiffs and Defendant NADIF with the Bankruptcy

Court.  Based on this revised agreement, the representations of Defendants=

developmental skills and financial wherewithal to its counsel, their pledge to finance

the project and the specific involvement in the project of Defendants, NADIF, Fisher

and Zukerman, counsel for Leeds advised the Bankruptcy Court at the September 21,

10

1999 hearing that it was consenting to the senior lien.  Based on these representations, the Honorable E. Stephen Derby approved the August 30, 1999 agreement and the super priority or senior lien.

15.    After obtaining the lien, NADIF  lent the $750,000 to Plaintiffs but Defendants made no appreciable effort to obtain the financing for the payment of the Leeds Federal loan or for completion of the project.  After the Bankruptcy Court had lifted the stay of foreclosure as to Leeds Federal, Defendants attempted to purchase the property at the foreclosure sale on April 30, 2001.

16.    Plaintiffs aver that, at all times, the Defendants acted for the sole purpose of  obtaining sole control of the project and then selling the land and development rights to others at a profit of approximately $6.2 million.  Defendants knew that their representations that they were successful and reputable developers, that North American Doctors Investment Fund and NADIF had assets in excess of $500 million and had the financial wherewithal to pay off the existing debt and complete the project, were false.  Defendants knew their representations that they intended to obtain funding to complete the project from third parties or, alternatively, issue a commitment for a construction loan themselves were false.  Fisher, Quinn and Zukerman had no intention of building Wyndholme and covered up Quinn's conviction. Rather, Defendants made these false representations for the purposes of gaining control of the project and securing liens on the property, in order to get control

11

of the property and/or contract to purchase the property at foreclosure and then sell or Aflip@ their contractual interest in the property at a profit of approximately $6.2 million, after eliminating Plaintiffs from the project.  Plaintiffs relied upon the Defendants= representations and would not have otherwise become involved with Defendants, entered any agreement with NADIF or WVI, L.C.C.  or sought a priority or senior lien from the Bankruptcy Court, had Plaintiffs known of Fisher=s or Quinn=s past.

17.     Plaintiff, Katherine A. Lancelotta, is the signator to the deeds and liens here in question and acted upon the Defendants= representations, which were passed on to her by her husband, Plaintiff, James M. Lancelotta.

18.     As a proximate consequence of Defendants=purposeful misrepresentations and omissions, Plaintiffs lost other financing that was available to them to pay off the existing debt and to finance the completion of the project, incurred unnecessary interest costs and lost the profits that would have been derived from the completion of the project, and subjected their properties to unnecessary liens.

WHEREFORE, Plaintiffs demand judgment in the amount of Nine Million Dollars ($9,000,000) compensatory damages and Nine Million Dollars ($9,000,000) punitive damages from the Defendants, NADIF of Wyndholme, LLC, WVI, LLC, Stuart ANeil@ Cornelius Fisher, and John R. AJack@ Quinn.

## COUNT II

### (Rescission and Restitution Damages)

Plaintiffs incorporate by reference all relevant allegations in Count I hereof.

19.    This Count seeks to void the August 31, 1999 contract and all subsequent liens and indebtedness of the Plaintiffs presently running in favor of the Defendants.  Based on the following, Plaintiffs do not have an adequate remedy of law so as to entitle them to rescission of the September 2, 1999 agreement and all liens encumbering the Plaintiffs' property as a consequence thereof based on equitable and public policy considerations, given fraud in the inducement.

20.    The Defendants, NADIF of Wyndholme, LLC and WVI, LLC are shell corporations, neither of which is registered to do business in Maryland. NADIF is nominally managed under the authority of  Gotham-Q Venture I, LLC, Mountainbrook Trust (Martin Zukerman, trustee) and Jolipenny II Trust (John J. Quinn, trustee), which , are, however, fictitious entities.  John R. Quinn, Howard Zukerman, Steven J. Garchik, David Klafter and William Ackman purport to manage NADIF of Wyndholme, LLC.  Martin Zukerman is Howard Zuckerman's elderly father. John J. Quinn is John R. Quinn's son. Gotham-Q Venture I, LLC is not organized under the laws of any state and is a front for Gotham Partners, L.P., operating by and/or through Section H Partners, L.P., a general partner, and a DPB Corp., also a general partner.

13

Garchik t/b/a SJM Partners, Inc. is the general agent of Gotham Partners, L.P. in Maryland.  Ackman is one of the Gotham Partners and David Klafter is its general counsel. WVI is similarly owned and controlled.  NADIF of Wyndholme, LLC and WVI have no employees, have never filed tax returns and do not maintain financial books and records, and the only asset they own is the August 31, 1999 letter agreement and Plaintiffs' liens and liabilities flowing there from.

21.    On September 8, 1999, Defendant Zukerman was indicted on eight counts of tax fraud in *United States of America v. Zukerman* (Case No. 99-CR-836 (E.D. N.Y.) (Uniondale)) and pled guilty to four of the counts on April 30, 2001.  At present, Defendant Zukerman has IRS and New York State tax liens against him in amounts totaling $327,110.  On  April 16, 2002, Defendant Zukerman was also indicted in *United States of America v. Hundley, et al.* (Case No. 02-CR-441-5 (S.D. N.Y.) (White Plains)), related to using straw and shell entities to defraud five financial institutions of $ 42.4 million.  Pursuant to 18 U.S.C., § 982, the Government seeks in the indictment to hold Zukerman and his five co-defendants jointly and severally liable for the $42.5 million and the forfeiture of all personal assets to the extent of the $42.5 million.  Superseding indictments were subsequently filed on July 11, 2002 and November 21, 2002. This case is still pending.

22.    On May 19, 1994, Quinn filed a Voluntary Petition under Chapter 7

14

in the United States Bankruptcy Court for the Southern District of Florida (Case No. 94-21941) by which on August 14, 1997 he discharged approximately $2.8 million in debt, including an IRS lien in the amount of $1,792,546.11. On August 17, 2000, Quinn filed a Voluntary Petition under Chapter 7 in the United States Bankruptcy Court for the Eastern District of Virginia (Alexandria) (Petition No. 00-13441), by which he discharged on December 12, 2000 $3,810,519.53 in debt, including New York State and IRS tax claims totaling $2,727.268.69. Quinn has not filed a federal tax return in over five years. Quinn has no real or personal property or assets in his own name. Quinn at present holds himself out as having no assets, income or visible support other than the charity of his son, John J. Quinn.

23.    On August 14, 1995, Fisher filed a Voluntary Petition under Chapter 7 in the United States Bankruptcy Court for the Eastern District of New York (Brooklyn) (Petition No. 95-16927). Among the $16,649,806.05 in total liabilities, Fisher listed $2.4 million owed to the Internal Revenue Service and $175,000 to the State of Virginia Department of Taxation. On August 20, 2001, Fisher again filed a Voluntary Petition under Chapter 7, albeit in the United States Bankruptcy Court for the Middle District of Florida (Gainesville) (Petition No. 01-00539), and was discharged on December 20, 2001. Fisher listed a $1,028,228.48 claim by the Internal Revenue Service of the total

15

$1,053,928.48 in liabilities. Fisher also filed a Chapter 11 proceeding in the United States Bankruptcy Court for the Western District of Virginia (No. 90-00414).  Fisher also conveyed his personal residence in Charlotte, North Carolina, and certain properties in Albemarle County, Virginia, to a newly-formed Virginia corporation, Wychwood Stables, Inc., and placed that corporation immediately into Chapter 11 reorganization.  Additionally, an entity controlled by Fisher and Quinn, in their capacity as trustees, Rookery Walk, Inc., f/k/a Terra Ceia Isles, Inc., was the subject of a Chapter 11 proceeding filed in the United States Bankruptcy Court for the Middle District of Florida (Tampa Division) (Case No. 92-2322.

24.    Defendant Fisher has no real or personal property or assets titled in his own name.  Fisher maintains all business assets in the name of his wife, Tamara J. Fisher, in single purpose entity corporations and limited liability companies, such as, for example,  1060 Brickell Partners, LLC, One Harborview, Inc. (formerly NADIF of Florida, Inc.)  and Harbor Holdings, Inc. (formerly NADIF of Inner Harbor, Inc.).  1060 Brickell Partners, LLC is owned by Gotham Partners, John R. Quinn, Stuart Fisher, Howard Zukerman and a Paul Slayton, although on information and believe John J. Quinn, Tamara Fisher and Martin Zukerman appear nominally as owners.  1060 Brickell Partners, LLC was formed for the development of 1060 Brickell Avenue in

Miami, Florida, which in part managed by Garchik and SJM Partners, Inc.
Similarly, Fisher's interest in the Baltimore Ritz-Carlton and/or inner harbor
project is nominally in the name of his wife, the nominal owner of One
Harborview, Inc. and Harbor Holdings, Inc.  Quinn also has a hidden interest in
the Baltimore project(s).  Fisher has a hidden interest in the Wyndholme
project.

Neither Fisher nor Quinn listed their respective interests in the instant
transaction or 1060 Brickell Partners, LLC as assets in their bankruptcy filings
in Case Nos. 00-13441 and 01-00539.  Fisher, Quinn and Zukerman have
secreted their assets, as set forth herein, for purposes of hiding them from the
Bankruptcy Courts and the Internal Revenue Service.

WHEREFORE, for the aforementioned reasons, Plaintiffs respectfully
request that the Court rescind the September 2, 1999 agreement and declare null
and void all liens and encumbrances upon the Plaintiffs' property flowing there
from and award Plaintiff restitution or incidental damages.

## COUNT III

### (Constructive Trust)

Plaintiffs incorporate by reference all relevant allegations in Counts I and
II hereof.

WHEREFORE, for the aforementioned reasons, Plaintiffs respectfully

17

request that the Court impose a constructive trust upon all assets of NADIF of Wyndholme, LLC and WVI, LLC.

## COUNT IV

### (Appointment of a Receiver)

Plaintiffs incorporate by reference all relevant allegations in Counts I, II and III hereof.

WHEREFORE, for the aforementioned reasons, Plaintiffs respectfully request that the Court appoint a Receiver for the management and operation of NADIF of Wyndholme, LLC and WVI, LLC.

_____
HOWARD J. SCHULMAN

Schulman & Kaufman, LLC
One Charles Center, Suite 600
100 N. Charles Street
Baltimore, Maryland  21201
(410) 576-0400
Attorney for Plaintiffs

-        REQUEST FOR JURY TRIAL

Plaintiffs respectfully request that this case be tried to a jury.

_____

18

HOWARD J. SCHULMAN

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of April, 2003, a copy of the foregoing

Amended Complaint and  Request for Jury Trial was mailed first-class, postage prepaid,

to Stuart C. Fisher, 173 Root Trail, Palm Beach, Florida 33480.

_____
\_ HOWARD J. SCHULMAN