1

1      IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MARYLAND
2

3   WYNDHOLME VILLAGE, LLC.,   :

4   Et al.,               :

5       Plaintiffs       : CIVIL ACTION NUMBER

6   vs.                  : L01-3809

7   NADIF OF WYNDHOLME, LLC.,   :

8   Et al.,               :

9       Defendants      :

10

11          * * * * * * * * * * * * * *

12      Deposition of HOWARD A. RUBENSTEIN, ESQUIRE,

13   taken on Wednesday, March 26, 2003, at 11:14

14   a.m., at the law offices of Adelberg, Rudow, Dorf

15   & Hendler, LLC, 600 Mercantile Bank and Trust

16   Building, 2 Hopkins Plaza, Baltimore, Maryland

17   21201, before Emily Rose Hoffman, Notary Public.

18          * * * * * * * * * * * * * *

19

20   Reported by:

21   Emily Rose Hoffman, Notary Public

111

1   ask it. Did Mr. Fisher --

2        MR. SCHULMAN: Your voice is dropping.

3   The question is so long and compound that by the

4   time you get to the end of it, you are exhausted

5   and your voice drops.

6        MR. SAMMONS: I fell asleep.

7    Q. Did Mr. Fisher identify himself as being

8   affiliated with North American doctors fund?

9    A. Yes.

10    Q. And did he represent in the course of

11   the early negotiations that North America's

12   doctors fund would actually provide the funding

13   of this project?

14        MR. SCHULMAN: Objection. I don't think

15   you have the name right.

16        MR. SAMMONS: Correct me. North

17   American -- off the record.

18        (Discussion off the record.)

19        BY MR. SAMMONS:

20    Q. I'm referring to North American Doctors

21   Investment Fund. Do you recall whether he

112

1   represented that North America Doctors Investment

2   Fund would actually provide the funding on this

3   project? Did he make that representation?

4      A. That or one of its entities.

5      Q. All right. I asked you a question or

6   two about signing of consent orders in connection

7   with the forbearance by NADIF and other secured

8   lenders. Do you recall that there were such

9   consent orders?

10     A. To motions to lift stay, yes.

11     Q. Were those consent orders freely

12   negotiated between the parties to the orders as

13   far as you know?

14     A. Yes.

15      MR. SAMMONS: All right. I have nothing

16   further. Thank you, Mr. Rubenstein.

17       EXAMINATION BY MR. SCHULMAN:

18     Q. I have just a few. You stated, I

19   believe, that Mr. Goldberg's client obtained the

20   deposits from the people that had given Wyndholme