IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WYNDHOLME VILLAGE, LLC, *et al.*,  *

   Plaintiffs  *

   v.  *  CIVIL ACTION NO.:  01-3809

NADIF OF WYNDHOLME, LLC, *et al.*,  *

   Defendants  *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTACHMENT BEFORE JUDGMENT
OR, IN THE ALTERNATIVE, FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY
INJUNCTION FREEZING DEFENDANTS' ASSETS

EVIDENCE THAT DEFENDANTS WILL ABSCOND

The Defendants, NADIF of Wyndholme, LLC and WVI, LLC, are shell entities, neither of which is registered to do business in Maryland.  NADIF nominally is supposedly owned and managed under the authority of Gotham-Q Venture I, LLC, Mountainbrook Trust (Martin Zukerman, trustee) and Jolipenny II Trust (John J. Quinn, trustee), which are fictitious entities.   John J. Quinn is John R. Quinn's son. Gotham-Q Venture I, LLC is not organized under the laws of any state.   *See* Quinn deposition, at 97-104, 127-129; affidavit of counsel (this filing). Fisher (at least sometimes), John R. Quinn, Zukerman, David Klafter of New York

City and William Ackman of New York City purport to manage NADIF of Wyndholme, LLC.  None of these persons, however, except Fisher, are listed anywhere as managing members, as required by 36 Florida Code, §§ 608.422 & 608.4101.  *See* McBride deposition, at 24-26; NADIF of Wyndholme, LLC interrogatory answer No. 6.  Nor is there an operating agreement.  According to the depositions of the corporate designees of NADIF of Wyndholme, LLC (McBride and Garchik), it and WVI, LLC have no employees, have never filed tax returns and do not maintain financial books and records, and the only asset they own is the August 31, 1999 letter agreement and Plaintiffs' liens and liabilities flowing there from.  The Defendants in this case have cross-collateralized the Wyndholme project with one located at 1060 Brickell Avenue in Miami, Florida.  *See* McBride deposition, at 84-85; Garchik deposition, at 83-85 & exhibit No. 4 thereto.

On September 8, 1999, Defendant Zukerman was indicted on eight counts of tax fraud in *United States of America v. Zukerman* (Case No. 99-CR-836 (E.D. N.Y.) (Uniondale)) and pled guilty to four of the counts on April 30, 2001.  At present, Defendant Zukerman has IRS and New York State tax liens levied against him in amounts totaling $327,110.  *See* True Test Copies submitted as Exhibits in non-ECF form.  On  April 16, 2002, Defendant Zukerman was also indicted in

*United States of America v. Hundley, et al.* (Case No. 02-CR-441-5 (S.D. N.Y.) (White Plains), related to using straw and shell entities to defraud five financial institutions of $42.4 million and tax evasion.  Pursuant to 18 U.S.C., § 982, the Government seeks in the indictment to hold Zukerman and his five co-defendants jointly and severally liable for the $42.5 million and the forfeiture of all personal assets to the extent of the $42.5 million.  Superseding indictments were subsequently filed on July 11, 2002 and November 21, 2002.   This case is still pending.  *See* attachment hereto (filed herewith in non-ECF form).

On May 19, 1994, Quinn filed a Voluntary Petition under Chapter 7 in the United States Bankruptcy Court for the Southern District of Florida (Case No. 94-21941) by which, on August 14, 1997, he discharged approximately $2.8 million in debt, including an IRS lien in the amount of  $1,792,546.11.  On August 17, 2000, Quinn filed a Voluntary Petition under Chapter 7 in the United States Bankruptcy Court for the Eastern District of Virginia (Alexandria) (Petition No. 00-13441), by which, on December 12, 2000, he discharged $3,810,519.53 in debt, including New York State and IRS tax claims totaling $2,727.268.69.  *See* True Test Copies submitted as Exhibits in non-ECF form.

On August 14, 1995, Fisher filed a Voluntary Petition under Chapter 7 in the United States Bankruptcy Court for the Eastern District of New York

(Brooklyn) (Petition No. 95-16927). Among the $16,649,806.05 in total liabilities, Fisher listed $2.4 million owed to the Internal Revenue Service and $175,000 to the State of Virginia Department of Taxation. On August 20, 2001, Fisher again filed a Voluntary Petition under Chapter 7, albeit in the United States Bankruptcy Court for the Middle District of Florida (Gainesville) (Petition No. 01-00539), and was discharged on December 20, 2001. Fisher listed a $1,028,228.48 claim by the Internal Revenue Service of the total $1,053,928.48 in liabilities. Fisher also filed a Chapter 11 proceeding in the United States Bankruptcy Court for the Western District of Virginia (No. 90-00414). *See* True Test Copies submitted as Exhibits in non-ECF form.

Defendant Fisher, according to his most recent bankruptcy filing, has no real or personal property or assets titled in his own name. Fisher appears to maintain his business assets in the name of his wife, Tamara J. Fisher, in single purpose entity corporations and limited liability companies, such as, for example, One Harborview, Inc. (formerly NADIF of Florida, Inc.) and Harbor Holdings, Inc. (formerly NADIF of Inner Harbor, Inc.) Brickell Realty Investors, LLC , and Palm Realty Ventures, LLC. The signature of Tamara Fisher reflected in the attached Florida Department of State records for these entities appears to be that of Stuart Fisher.

Neither Fisher nor Quinn listed their respective interests in the instant transaction or in the Brickell Avenue venture as assets in their bankruptcy filings in Case Nos. 00-13441 and 01-00539. Stuart Fisher performed the services related to the Brickell Avenue venture, but the name of Tamara Fisher appears on the papers. *See* McBride deposition, at 26-32.

Attached are Florida Department of State records for some of the entities reflected on the cross-collateralization agreement. The Articles of Organization for Brickell Realty Investors, LLC reflect that John J. Quinn is the managing member. Similarly, the Articles of Organization for Palm Realty Ventures, LLC reflect that Tamara J. Fisher is the managing member. The 2003 Limited Liability Company Uniform Business Report for Brickell Realty Investors, LLC reflects that its managing members are John J. Quinn and Tamara J. Fisher. The 2003 Limited Liability Company Uniform Business Report for Palm Realty Ventures, LLC reflects that Tamara J. Fisher now remains as the managing member. The Articles of Organization for Plaza of Sarasota, LLC reflects that its managing member was Howard D. Zukerman.

Quinn, according to his deposition, has no personal real property or assets in his own name. Quinn keeps his assets in the name of his son, John J. Quinn and receives compensation from what he terms trusts and side agreements. *See* Quinn

5

deposition, at 97-104. Quinn also testified that his son "takes good care of" him and pays for his residence, car and expenses. *See* Quinn deposition, at 128-29. Quinn did not file a tax return in 1999 and could not remember at deposition, when he had last filed a tax return. He had not filed one in at least five years. *See* Quinn deposition, at 195-96. Quinn, according to his deposition, received, along with Fisher, a several hundred thousand dollar fee for the Baltimore Inner Harbor project, ostensibly through Tamara Fisher and John J. Quinn. *See* Quinn deposition, at 123-28. Based on this alone, one could reasonably conclude that the individual defendants, who are managers of NADIF of Wyndholme, LLC, have secreted their assets and income for purposes of hiding them from the Bankruptcy Courts, the Internal Revenue Service and other creditors. Based on this and the fact that fictitious entities own and operate NADIF of Wyndholme, LLC, one could reasonably conclude that the Defendant has as its purpose the hiding of assets from the Bankruptcy Courts, the Internal Revenue Service and other creditors.

EVIDENCE OF FRAUD IN THE INDUCEMENT

The complaint alleges:

[Defendant] Fisher, in the presence of Quinn and
Zukerman, told Lancelotta that the three of them were
successful and reputable developers and were principals

6

>of North American Doctors Investment Fund, which Fisher told Lancelotta had assets in excess of $500 million. Fisher told Lancelotta that North American Doctors Investment Fund would be able to obtain the millions of dollars required to pay off the existing debt and to finance the completion of the project. Fisher also told Lancelotta that if NADIF could not obtain financing from a third party, NADIF had more than enough assets to make the loan itself. Fisher told Lancelotta that North American Doctors Investment Fund always operated through single purpose subsidiaries, which, in this case, would be NADIF. Fisher described to Lancelotta his role in North American Doctors Investment Fund and NADIF as that of being the rainmaker for investment funds, that Quinn was a successful and highly regarded real estate developer and that Zukerman brought with him particularized financial expertise in implementing financing for projects such as Wyndholme.

See Complaint, ¶ 12. Mr. Lancelotta's Affidavit on file with this Court, ¶¶ 8, 9 & 13 (Paper No. 8), reflects that, based on Fisher's representations, NADIF, particularly given its financial wherewithal, would fund the construction loan if others did not. Mr. Lancelotta testified at deposition to the same effect.[1] *See, e.g.,* Tr. 104-05, 115, 245-46, 318-320 (copies attached). Mr. Lancelotta's testimony is corroborated by the deposition testimony of Curtis Coon, Esquire (Tr. 25-42), who was personal counsel to Mr. Lancelotta, and by Howard Rubenstein, Esquire

---

[1] Fisher's cards which he distributed to Messrs. Lancelotta, Coon and Rubenstein stated The NADIF Group to be a real estate equity and development fund. *See* Rubenstein deposition, at 114-15; Lancelotta, at 104-05. A copy of the card is attached.

(Tr.15, 111-112, 114-15), who was bankruptcy counsel to Wyndholme Village, LLC. Copies of these portions are attached.

The bankruptcies filed by Fisher and Quinn belie their representations to Lancelotta that they were successful and highly-regarded real estate developers. Fisher, the managing agent of NADIF, has refused to answer interrogatories, respond to requests for production of documents and appear at depositions in this case. Motions to compel are pending. This is to say that Fisher, the managing agent of NADIF of Wyndholme, LLC and WVI, LLC, has absconded and taken flight instead of answering the allegations in the complaint. Fisher, thus, has refused to testify about the North American Doctors Investment Fund and "The NADIF Group, A Real Estate Equity and Development Fund". His failure to do so should be construed against NADIF of Wyndholme, LLC since he is still the managing member, according to the Florida Department of State. *See* attached Florida Department of State files No. H9900003986. Likewise, Zukerman's conviction for failing to file tax returns and his indictment are evidence that he was not the successful CFO that was represented to Lancelotta. *See* attached papers from Cr 99-Cr-836 & 02-Cr-441-5; Lancelotta deposition, at 105.

## STATUS AS TO OUT-OF-STATE DEFENDANTS

Defendant NADIF of Wyndholme, LLC acknowledged in the July 8, 1999

and August 31, 1999 agreements, which are, in part, the subject of this action, that it was a Florida Limited Liability Company. Fisher signed on behalf of NADIF of Wyndholme, LLC, identifying it as a Florida Limited Liability Company. *See* Lancelotta affidavit, ¶¶ 10-13 & attachments thereto (Exhibit A, Paper No. 8). The Maryland State Department of Assessments and Taxation records reflect that NADIF of Wyndholme, LLC has never been registered or had a Resident Agent in the State of Maryland. The Florida Department of State, Division of Corporate Records, reflects NADIF of Wyndholme, LLC as a Florida Limited Liability entity, with an address in Palm Beach, Florida and the Resident Agent in Miami, Florida. *See* Affidavit of Counsel (Exhibit B, Paper No. 8).

The Notice of Transfer of Claim and Request for Substitution of Claimant by Clerk and Waiver of Notice by Transfer, which was filed by WVI, LLC in the United States Bankruptcy Court for the District of Maryland (Northern Division) (Case No. 99-5-3494SD) on September 1, 1999 (docket entry No. 47), states that WVI, LLC is a Delaware Limited Liability Company. Stuart Fisher signed this document in his capacity as vice-president of WVI, LLC. *See* Affidavit of Counsel & attachment (Exhibit B, Paper No. 8). Similarly, WVI, LLC does not maintain a Resident Agent in the State of Maryland and has never been registered in Maryland. *See* Affidavit of Counsel (Exhibit B, Paper No. 8).

Each of the individual Defendants advised the Plaintiff, James M. Lancelotta, that they resided outside of the State of Maryland, Defendant Fisher in Florida and the Defendants Quinn and Zukerman in New York. Fisher and Zukerman gave Lancelotta business cards to this effect. *See* Lancelotta Affidavit, ¶8 and ¶17 (Exhibit A, Paper No. 8).

Based on the Affidavit of James M. Lancelotta (Exhibit A, Paper No. 8) and the Bankruptcy Court papers and transcripts (Paper No. 8), this Court has personal jurisdiction over NADIF of Defendant Wyndholme, LLC under Courts and Judicial Proceedings Article, Section 6-103 (cause of action arising from conduct in State), as Defendants have conceded. The Lancelotta Affidavit establishes that Stuart Cornelius "Neil" Fisher, John R. "Jack" Quinn and Howard Zukerman were agents, servants and employees of the Defendant, NADIF of Wyndholme, LLC, and that they committed acts in Maryland in furtherance of the scheme to defraud the Plaintiffs and otherwise concerning the events leading up to the contracts in issue. Fisher, Quinn and Zukerman held themselves out as principals in NADIF of Wyndholme, LLC. *See* Lancelotta Affidavit, ¶¶ 8-13 (Exhibit A, Paper No. 8). Fisher, Quinn and Zukerman met with Lancelotta, Lancelotta's personal attorney and the bankruptcy attorney for Wyndholme Village, LLC in Baltimore and made the representations that are the subject of the complaint. Fisher signed the July 8,

1999 and August 30, 1999 agreements in Maryland knowing they would be filed with the United States Bankruptcy Court for the District of Maryland (Northern Division) here in Baltimore and be subjected to proceedings in that court, as reflected in the transcripts of the August 4, 1999 and September 21, 1999 hearings in the Bankruptcy Court (Exhibits C & D, Paper No. 8).  Defendant Fisher signed the August 30, 1999 agreement in Baltimore on behalf of NADIF of Wyndholme, LLC.  *See* Lancelotta Affidavit (Exhibit A, ¶¶ 8-13).  Both NADIF of Wyndholme, LLC and WVI, LLC appeared in the bankruptcy proceedings in Baltimore and actively participated concerning this matter.  *See* docket entries attached to Affidavit of Counsel (Exhibit B, Paper No. 8) and September 21, 1999 transcript (Exhibit D, Paper No. 8).  Howard Zukerman appeared and testified in the bankruptcy proceedings in his capacity as the Chief Financial Officer for NADIF of Wyndholme, LLC on January 11, 2000.  *See* transcript (Exhibit E, Paper No. 8, Tr. 123).

ARGUMENT

   A. <u>Nature of NADIF of Wyndholme, LLC's Interest</u>

In follow up to a February 5, 2003 telephone conference with counsel, the Court issued a Memorandum on February 6, 2003 (entered February 12, 2003, Paper No. 39), directing the parties to address the effect of *Consolidated*

*Construction Services, Inc. v. Simpson*, 372 Md. 434 (filed December 23, 2002, corrected February 11, 2003), which held that "contingent" debts are not within the scope of Md. Cts. & Jud. Pro. Art., § 3-305 and, thus, not attachable. A short answer to the Court's question is that while a judgment in this case is contingent upon the Plaintiffs' success in this case, the property and credits that the Plaintiffs seek to attach in this instance are not contingent and are authorized by § 3-305.

*Consolidated Construction* did not invalidate § 3-305. It went no further than to state that Maryland Rule 2-645, to the extent that it authorized garnishment of property beyond what § 3-305 authorized, was invalid and held that the plaintiff there could not attach a contingent interest. In *Consolidated Construction*, Simpson (the respondent) sued New Panorama for defaulting on a mortgage for the purchase of the property referred to in the opinion as the "Pleasant Chase Property", which New Panorama had attempted to develop. New Panorama (one of the petitioners before the Court of Appeals) had sued Consolidated Services, another petitioner and a contractor, for various claims, including damages, for its work on the Pleasant Chase Development. New Panorama also sued for damages against several sub-contractors on the project, including Atlas Plumbing & Mechanical, Inc., Paving & Sealant, Inc. and Professional Services, Inc. Respondent Simpson obtained a judgment against New Panorama and served writs

of garnishment on the parties to the cases initiated by New Panorama, as well as upon New Panorama's attorney and the escrow agent for a settlement fund created by the settlement agreement in the litigation initiated by New Panorama. The settlement agreement provided that it was contingent upon the termination of the respondent's garnishments and that the escrow agent could not distribute the settlement funds nor file a stipulation of dismissal until he had received a court order dismissing with prejudice the garnishments and that order had become final after exhaustion of appellate review. If any portions of the fund were ruled to be subject to garnishment by the respondent, the settlement agreement contemplated would be deemed null and void and the parties would resume their respective positions in their litigation.

>    The Court of Appeals noted that:
>
>> A matured debt is one in which the sum is certain and is due, i.e., matured. An unmatured debt is one in which the sum is certain and *the time for payment of the debt has yet occurred*. Generally, a contingent debt is no more than a possibility that a presently unascertainable sum might possibly be owed to the debtor from the person sought to be garnished at some future time.  *See* 372 Md., at 448-49.

In reaching its conclusion that contingent debts were not attachable, the Court of Appeals reaffirmed its holdings in *Belcher v. GEICO*, 282 Md. 718 (1978), and in

*Fico, Inc. v. Ghingher*, 287 Md. 150 (1980), that contingent debts were not attachable and remain valid despite the adoption of Maryland Rule 2-645 because the Court lacked the power under § 3-305 to extend attachments to contingent debts. Unmatured debts are attachable, but contingent debts are not. *Id.*, at 454-55. *Belcher*, distinguishing between a contingent and unmatured interest, stated that while a garnishee's liability may be somewhat uncertain with respect to an unmatured debt, a contingent interest, nonetheless, is one in which liability is not certain and absolute but depends on some independent event. *Belcher*, 282 Md., at 723n.2. In other words, an interest is contingent and may never become due and payable. *Id.*, at 723, *citing Fairfax v. Savings Bank*, 175 Md. 136, 141 (1938); *Safe Deposit & Trust Co. v. Ind. Brewing Assn.*, 127 Md. 463, 468-69 (1916); *Suskin & Berry v. Rumley*, 37 F.2d 304, 306 (4th Cir. 1930) (interpreting Maryland law).

The issue in *Belcher* was whether the courts of Maryland could acquire jurisdiction in a personal injury action by attaching the obligation of an insurance company to an absent defendant as a policyholder in an automobile liability insurance contract. The Court of Appeals held that such an attachment would not lie because the obligation of indemnification under the policy was a contingent interest. In doing so, the Court noted other types of contingent interests, such as a declaration of trust for a husband being contingent upon the survival of his wife;

14

creditors of an appointer not being able to attach property which is subject to his power of appointment; right granted to husband by wife's will to sell life estate for personal needs created on attachable personal right in life estate; right of election under a will is personal and not attachable; power to select scholarship recipient is personal privilege not subject to attachment.  *See id.*, at 724 & 725.4; *see also Suskin*, 37 F.2d, at 306 (holding that interest of bankrupt in a trust estate created by a will is a remainder and, therefore, contingent so as to be levied upon).

In *Fico*, the Court of Appeals decided the question of whether an escrow fund held under the Maryland Bulk Transfer Act by the garnishee for payment of creditors who had been listed and given notice or filed claims could be attached by a judgment creditor who was not listed or given notice and who did not file a claim. Citing *Belcher*, 282 Md. at 723, 724n.3; *Fairfax v. Savings Bank* (survivorship trust under a will); *Safe Deposit & Trust* (spendthrift trust); and *Harris v. Whiteley*, 98 Md. 430 (1904)(curtesy), the Court stated:

> When an interest is uncertain and contingent in that it may never become due and payable, it is not within the scope of Maryland's attachment statute and is not subject to attachment. A contingent interest is one in which liability is not certain and absolute, but depends upon some independent event.

The *Fico* court went on to quote from *Javorek v. Superior Court of Monterey County*,

17 Cal. 3d 629, 636, 552 P.2d 728, 737 (1976), a case cited by the *Belcher* court in distinguishing between a matured and contingent interest:

> Where there is no contingency as to the garnishee's liability, the only contingency being as to the amount thereof, and where the amount of the liability is capable of definite ascertainment in the future, there is no such contingency as prevents garnishment of the claim, even though it has been held, it may be that eventually it will be found that nothing is due.

The Court of Appeals went on to hold that the garnishee conceded that the seller was entitled to recover any surplus remaining in the escrow fund so that there was no question concerning the garnishee's liability. Although the Court concluded in its final analysis that the liability cannot presently be determined, the amount could be definitely ascertained in the future after the disputed claims had been satisfied. Thus, the Court concluded that the seller had an unmatured interest and not a contingent interest in the escrow fund and was subject to attachment. *Id.*, at 160-61. The Court also noted that the attachment on judgment served as an inchoate lien, which is binding not only on all of the judgment debtor's assets which the garnishee then had in his possession, but also on those that would come into their hands before judgment. This attachment, the Court noted, "serves the useful function of preventing the garnishee from prematurely disposing of any of the judgment debtor's assets." *Id.*, at 162.

Here, it would appear that the interest of NADIF of Wyndholme, LLC that Plaintiffs seek to attach is clearly not contingent. Leeds Federal Savings Bank successfully bid on the property for $1.4 million at the foreclosure sale, and that sale has been ratified. Thus, there appear to be no contingencies. Further, the interest in NADIF of Wyndholme, LLC appears to have matured, as opposed to remaining unmatured.

B. Equitable Authority

Assuming that Plaintiffs are unable to attach the interest of NADIF of Wyndholme, LLC based on Cts. & Jud. Proc. Art., §§ 3-302 *et seq.*, this Court may, nonetheless, freeze the Defendant's assets, pending the resolution of this case, by exercising its equitable powers. In *Leavitt v. State of Maryland Deposit Insurance Fund Corporation*, 66 Md. App. 524 (1986), the Court upheld the authority of the Circuit Court to issue a pre-judgment injunction and conditionally impounded the property of Jeffrey and Karol Leavitt even though Cts. & Jud. Proc. Art., § 3-303 did not apply. The Court held:

> Apply general equitable principles to the instant case, we hold that when fraud is alleged and the facts as pleaded indicate a substantial likelihood of fraud, as well as the probability that the defendants will, before judgment, dispose of assets fraudulently acquired, a court has jurisdiction to enjoin the defendants' dissipation of assets. *Id.*, at 537.

*See, also, U.S. Ex Rel. Rahman v. Oncology Associates*, 198 F.3d 489 (4th Cir. 1999) (holding that the District Court was authorized to enter a preliminary injunction freezing assets in furtherance of the alleged equitable relief claimed in an action where the Government also claimed substantial money damages).

        Howard J. Schulman
        SCHULMAN & KAUFMAN, LLC
        One Charles Center
        100 N. Charles Street, Suite 600
        Baltimore, Maryland  21201
        (410) 576-0400
        Attorneys for Plaintiffs and
        Counter-Defendants

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 23rd day of April , 2003, a copy of the foregoing Memorandum in Support of Plaintiffs' Motion for Attachment Before Judgment or, In the Alternative, For Temporary Restraining Order and Preliminary Injunction Freezing Defendants' Assets was mailed first-class, postage prepaid, to Stuart C. Fisher, 173 Root Trail, Palm Beach, Florida 33480.

        Howard J. Schulman

Case 1:01-cv-03809-BEL    Document 54-2    Filed 04/23/2003    Page 19 of 19