1

1      IN THE UNITED STATES DISTRICT COURT

2        FOR THE DISTRICT OF MARYLAND

3

4   WYNDHOLME VILLAGE, LLC, et al :

5   Plaintiffs/Counterdefendants  :

6    Vs.                : CIVIL ACTION NO.

7   NADIF OF WYNDHOLME, LLC, et al:   L01-3809

8   Defendants/Counterplaintiffs  :

9

10

11       Deposition of STEPHEN GARCHIK, taken on

12   Thursday, April 3, 2003, at 10:42 a.m., at the

13   law offices of Schulman & Kaufman, LLC, 100 N.

14   Charles Street, Suite 600, Baltimore, Maryland,

15   before Bonnie L. Russo, Notary Public.

16       ------------------------

17

18

19

20   Reported by:

21   Bonnie L. Russo

83

1  correspondence relative to that then that would

2  be the only way I could tell what the date was.

3      Q.  Do you have any information why Palm

4  Realty Ventures, LLC is a party to the Brickell

5  Avenue venture?  I am referring to Exhibit 4,

6  page N 0004.

7      A.  My recollection of the Brickell Avenue

8  transaction was that unlike NADIF of Wyndholme

9  where only designees of Rusty and Jack were to be

10  members of the LLC, that Brickell included

11  designees of Rusty, Jack and Neil.  Now, I have

12  no way to know if that's the entity that he chose

13  or not, but my understanding as a person who is

14  doing work on behalf of Gotham Partners was that

15  the nonGotham ownership would include designees

16  of Jack, Rusty, Neil, and, of course, Paul

17  Slayton.

18      Q.  And the one, the agreement for Wyndholme

19  Village, would only include the designees of

20  Zukerman and Quinn; is that right?

21      A.  That's my understanding.

...

84

1    Q. Do you know why it was that Fisher had

2 no designee for that project?

3    A. I have no idea.

4    Q. What is your understanding of what this

5 agreement is?

6    A. It appears to be an agreement that

7 documents two potential outcomes from the sale or

8 liquidation of the assets of the Wyndholme --

9 NADIF of Wyndholme, LLC investment and the 1060

10 Brickell partners investment.

11    Q. And what does it provide in that regard?

12    A. It provides that generally in the event

13 that one sells before the other and produces what

14 is defined here as a surplus sale, which means

15 that the proceeds from the sale or liquidation of

16 one exceeds all the liability of the entities,

17 the future entities whose assets are being sold,

18 so it pays back -- in simple terms it pays back

19 to Gotham Partners enough money to get their

20 capital back from both investments. The sale of

21 one entity would potentially pay back enough to

85

1  get Gotham Partners their previous and return of

2  capital from both investments.

3      And then described as 2 A talks about

4  what will happen to that money, that excess

5  money, if it is resolved. It is distributed and

6  the like.

7      Q. Is that why it is referred to as the

8  cross-collateralization agreement?

9      A. That would make sense. It is

10  effectively cross-collateralization, the capital

11  that Gotham has invested in both projects.

12      Q. Do you know whether there is in

13  existence an agreement for the Brickell Avenue

14  project that is similar to the first four pages

15  of Exhibit 5, that is an agreement that sets

16  forth the basic understanding of the parties with

17  regard to the Brickell Avenue project separate

18  and apart from any cross-collateralization

19  agreement considerations?

20      A. Is there an agreement that looks similar

21  to this one?