IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **WYNDHOLME VILLAGE, LLC,** *et al.* | * |
| Plaintiffs and Counterdefendants | * |
| v. | *   CIVIL ACTION NO. L01-3809 |
| **NADIF OF WYNDHOLME, LLC,** *et al.* | * |
| Defendants and Counterplaintiffs | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN OPPOSITION TO
MOTION TO AMEND COMPLAINT**

Defendants, NADIF of Wyndholme, LLC, ("NADIF"), WVI, LLC ("WVI") and John R. "Jack" Quinn ("Quinn"), by their undersigned counsel, file this memorandum in opposition to Motion to Amend Complaint ("Motion") filed by the plaintiffs, Wyndholme Village, LLC ("Wyndholme Village"), James Lancelotta, and Katherine Lancelotta in the above case.

**INTRODUCTION**

On April 14, 2003, the plaintiffs filed a motion to amend their complaint. The amendment, if allowed, would do four things. First, it would add the words "breach of contract" to the title of the only count in the original complaint, purportedly creating a single count for fraud <u>and</u> breach of contract (where the original complaint only alleged fraud). But the new "count" identifies neither the contract nor the breach, so the purpose and effect of that proposed amendment is unknown. Second, it would add a count (proposed Count II) seeking rescission of a 1999 agreement between the parties, with a concomitant voiding of a 1999 lien. What the plaintiffs do not disclose in their proposed

amendment is that (a) both the agreement and the lien were expressly approved by an order of the bankruptcy court and that any attempt to rescind would constitute an impermissible collateral attack on that bankruptcy court's order; (b) the corporate defendants paid over $2.5 million to the plaintiffs (return of which has not been tendered by the plaintiffs) in reliance upon the bankruptcy court's order validating the agreement and the lien; (c) the plaintiffs long ago waived any right to rescind by electing to sue only for damages; and (d) rescission of the lien would adversely affect the property rights of a third party, who has not been sued by the plaintiffs.  Third, the plaintiffs ask (in proposed Count III) that the assets of defendant NADIF (proceeds of a foreclosure sale) be placed in a "constructive trust" so that the Court my oversee the use and distribution of those assets.  What the plaintiffs do not discuss is that they have filed a motion for attachment in this case that is, in essence, duplicative of the "constructive trust" remedy sought by amendments.  The reasons why the foreclosure sale proceeds are not subject to attachment will be thoroughly addressed by the defendants in opposition to the attachment motion.  Finally, the amended complaint would have the Court appoint a "receiver," of those same assets.  But, aside from alleging no facts that would support the appointment of a receiver, the "receivership" remedy is also essentially duplicative of the attachment that the plaintiffs separately seek.  The "receivership" adds nothing new and the defendants will respond fully to the attachment point in due course.  As amplified below, the proposed amendment by the plaintiffs would be futile and the amendment should not be permitted.

     Just as importantly, the motion is untimely.  It is barred by this Court's scheduling order.  It was filed some eighteen months after the filing of the original complaint, seven

months after the expiration of the time for amending the complaint under the applicable scheduling order, four months after the original discovery deadline, and within days of the expiration of the extended discovery deadline, agreed to by the parties and approved by the Court.  The motion does not explain or seek to excuse the obviously tardy filing-- nor could it.  There are virtually no facts underpinning the amended complaint that were not known, or with reasonable diligence could not have been known, to the plaintiffs when the original complaint was filed.  And, to allow new claims to be asserted now, would reshape the case and require new discovery.  It is simply too late for the plaintiffs to be raising new issues, new claims, and new forms of relief.

Although Federal Rule of Civil Procedure 15(a) states that leave to amend a pleading shall be freely given, a Court may not grant leave when the moving party's filing of the proposed amendment is unduly delayed, done in bad faith or with a dilatory motive, prejudices the opposing party, or when the amendment would be futile.  See National Bank of Washington v. Pearson, 863 F.2d 322, 327-28 (1988), and HQM, Ltd. v. Hatfield, 71 F. Supp.2d 500, 509 (D. Md. 1999)(quoting Johnson v. Oroweat Foods, 785 F.2d 503 (4th Cir. 1986); Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962)).  The plaintiffs have not demonstrated, nor can they demonstrate, why the Court should permit their untimely and flawed amendment under those applicable standards.  The motion should be denied.

## ARGUMENT

I.  **The Proposed Amendment is Untimely.**

The complaint in this case was filed in October 2001.  The scheduling order issued by the Court gave the plaintiffs almost one year to amend their complaint if they

so choose, setting a September 20, 2002, deadline.  See Exhibit A, Scheduling Order.  Federal Rule of Civil Procedure 16(b) provides that scheduling orders are binding on the parties and may only be modified by approval of the court upon a showing good cause.  The plaintiffs' motion is completely silent on the issue of good cause.  Indeed, the motion is not accompanied by a memorandum "setting forth the reasoning and authorities" for the motion, as required by Local Rule 105.1--another reason why the motion should be denied.  But, in any event, the plaintiffs have the burden of demonstrating "good cause" for their tardy amendment and they have not done so; the motion should be denied under Rule 16(b).[1]

Apart from the failure of the plaintiffs to meet their burden of demonstrating "good cause," the amendment should not be allowed because the defendants would be prejudiced by the plaintiffs' delay.  The Court's deadline for amendment of the pleadings allowed the parties sufficient time to complete discovery on any new claims or causes of action before the close of discovery.  The original deadline for the close of discovery was December 19, 2002.  The parties, by agreement and with approval of the Court, extended the discovery deadline to April 19, 2003, but that deadline has also now come and gone.  See Exhibit B, Memorandum to Counsel (extending discovery deadline).  Discovery in this matter is now virtually complete.  Extensive deposition, interrogatory, and document

---

[1] Nor can there be any bona fide argument that "good cause" exists.  In the motion the plaintiffs allege that the amended complaint asserts no new substantive allegations.  Accepting that characterization, it is apparent that the plaintiffs knew of all of the facts now alleged when they filed their original complaint but chose to proceed only on the fraud claim for money damages.  Absent an explanation of why they waited eighteen months to bring claims that could have been brought originally, the Court may infer that the plaintiffs' late filing of the motion to amend was done with the intention of harassing the defendants.  See National Bank of Washington, 863 F.2d at 328 (quoting Davis v. Piper Aircraft Corp., 615 F.2d 606 (4th Cir.), cert. dismissed, 448 U.S. 911, 101 S. Ct. 25, 41, 65 L. Ed. 2d 1141 (1980)).

discovery has been conducted. The parties now are simply completing depositions that have already been noted. If the Court permits the plaintiffs to amend the complaint at this late date, the defendants will either be precluded from taking discovery on the new issues (because the deadline will have expired) or be forced to engage in additional discovery. It would be "manifestly unfair to make [the defendants] . . . conduct discovery a second time in order" to answer the plaintiffs' newly asserted causes of action and claims. National Bank of Washington, 863 F.2d at 327 (quoting Deasey v. Hill, 833 F.2d 38, 40 (4th Cir. 1987), cert. denied, 485 U.S. 977, 99 L. Ed. 2d 483, 108 S. Ct. 1271 (1988)). During discovery, the defendants focused on the misrepresentations alleged by the plaintiffs in their complaint, as the complaint did not raise any other allegations. The new claims alleged by the plaintiffs and the new remedies requested by the plaintiffs require a different focus and the investigation of new facts.

## II. The Plaintiffs Are Not Entitled To Their Rescission Remedy (Proposed In Count II) and the Amendment Would, Therefore, Be Futile.

### A. Background Facts.

In Count II of the proposed Amended Complaint, the plaintiffs seek to rescind an agreement between the parties dated August 30, 1999 (the "Venture Agreement").[2] A copy is attached as Exhibit C. In order to understand the impropriety and futility of the plaintiffs' rescission claim/remedy, a brief factual discussion is required.

---

[2] In discussing rescission, the plaintiffs variously identify the agreement to be rescinded as one dated "August 31, 1999," and one dated "September 2, 1999." Proposed Amended Complaint at ¶ 19. For the purpose of this opposition, the defendants assume that these are misstatements by the plaintiffs and that the plaintiffs, in fact, intend to refer to the Venture Agreement dated August 30, 1999.

In the summer of 1999, Wyndholme Village, LLC, the single-purpose entity created by plaintiff James M. Lancelotta to develop the project referred to in the complaint, was in bankruptcy. Compl. ¶ 7. In June 1999, the parties began negotiations with a view towards NADIF and WVI (both to be created) providing certain funds for the project. Compl. ¶ 12. The Venture Agreement was the culmination of those negotiations. It called for, among other things, the loan by NADIF of $750,000 to Wyndholme Village in return for a "super priority" lien on the property; that is, a lien with a priority over the existing lenders, including Leeds Federal Savings Bank ("Leeds Federal"), a purchase money lender with respect to the property. Exhibit C at ¶ 2; Compl. ¶ 12. Because Wyndholme Village was in bankruptcy, both the Venture Agreement and the creation of the lien required the approval of the bankruptcy court. A hearing was held in September 1999 with respect to the debtors' motion to approve the Venture Agreement and, on September 22, the court granted the motion, approved the Venture Agreement, and approved the creation of the super priority lien in favor of NADIF. A copy of the Order dated September 22, 1999, is attached as Exhibit D. The parties subsequently entered into a confirmatory deed of trust to memorialize the provisions of the court's order, and that deed of trust was filed among the Land Records of Baltimore City. See Exhibit E. Following approval by the Court, NADIF funded the $750,000 loan, and provided additional loans totaling $250,000 to Wyndholme Village and Mr. Lancelotta (personally). In addition, WVI was created and it purchased a second loan on the property, paying in excess of $1 million.

Notwithstanding the infusion into the project of over $2.5 million by NADIF and WVI, Wyndholme Village did not succeed, and remained in bankruptcy. A year later, on October 16, 2000, the parties entered into a consent order under which NADIF agreed to forbear from foreclosing on its super priority lien for a period of time while reorganization funding was sought. A copy of that order is attached as Exhibit F. The reorganization plan called for the payment, in full, to both NADIF and WVI of the amounts that they had advanced. A copy of that plan is attached as Exhibit G.

The reorganization failed, because funding could not be located, and NADIF and WVI were not paid. See Deposition at J. Lancelotta, excerpts of which are attached as Exhibit H at 358-59. Finally, a year later, Wyndholme Village moved to dismiss its bankruptcy to permit it to file suit against the current defendants for alleged fraud. See, Motion to Dismiss, attached as Exhibit I. This case was filed a few months later.

In the meantime, Leeds Federal, the purchase money lender who had held a second position behind NADIF's super priority lien, foreclosed on its mortgage and, on three separate occasions, sold the property at foreclosure. None of the purchasers at those foreclosure sales was able to consummate the sale and each forfeited its substantial deposit. See, excerpts of Deposition of James Lancelotta, attached as Exhibit J, at 494. Finally, in November 2002, NADIF docketed a foreclosure of its super priority lien. Wyndholme Village moved to enjoin the sale, but the Circuit Court for Baltimore City denied the motion. See Circuit Court Order dated December 2, 2002, attached as Exhibit K. The auction was held and Leeds Federal was the successful bidder. In the meantime Wyndholme Village had filed for bankruptcy on the morning of the sale, hoping to stay the foreclosure proceeding. After various pleadings were filed in the bankruptcy court on

that issue, Judge Derby rejected the argument concluding, among other things, that there was no stay and that he would not permit the Wyndholme Village filing to stay or invalidate the foreclosure sale.[3]  See, Judge Derby's order dated April 14, 2003, attached as Exhibit L.  Wyndholme Village then filed objections to the ratification sale, but the objections were rejected by the Circuit Court and the sale was ratified.  See Circuit Court order dated April 16, 2003, attached as Exhibit M.  The ratification order has been appealed by Wyndholme Village.

It is against this factual backdrop that the plaintiffs' proposed amendment, particularly the amendment asserting the right to rescission, must be considered.

    **B.**    **The Plaintiffs' Attempt To "Rescind" The Venture Agreement And NADIF's Lien Constitute An Impermissible Attempt To Enjoin The Current Foreclosure Proceedings.**

If the plaintiffs are allowed to amend their complaint to seek rescission of NADIF's lien, then a cloud will be created on the title to the Wyndholme Village property and, as a result, the substitute trustees in the Circuit Court foreclosure action will be unable to convey marketable title.  Thus, if the amendment is allowed, the plaintiffs would accomplish indirectly what they have tried and failed to do directly; that is, to prevent the sale and closing on the sale of the Wyndholme Village property.  And that would happen notwithstanding the fact that the sale has been ratified and confirmed by the Circuit Court, over the plaintiffs' objections.  The resulting harm to NADIF and the

---

[3]    Judge Derby's Order was based, in part, on the Consent Decree discussed above, Exhibit F, in which Wyndholme Village agreed that any subsequent bankruptcy filing would not operate to stay any foreclosure by NADIF.

#339699    8

contract purchaser, Leeds Federal, would be immediate, irreparable, and substantial. The amendment should not be allowed.[4]

### C. The Plaintiffs Are Collaterally Estopped From Challenging NADIF's Lien Because It Was Judicially Created and Authorized.

The plaintiffs' only purpose in seeking to amend to add the rescission remedy appears to be to impede the sale of the Wyndholme Village property. As addressed above, the prosecution of the rescission claim, and perhaps all of the equitable claims, will likely create a cloud on title and stop the judicially ordered and approved sale of the Wyndholme Village property. Aside from other problems addressed in this opposition, the plaintiffs are in the wrong court if they wish to challenge the validity of NADIF's lien. The lien was created by order of the bankruptcy court and any attempt to modify that order should be brought (and should have been brought years ago) in that court. "[A] challenge for error may be directed to the ordering court or a higher court, as the rules provide, but it may not be made collaterally unless it is based on the original court's lack of jurisdiction. These principles are firm and long standing." Spartan Mills v. Bank of America Illinois, 112 F.3d 1251, 1255 (4th Cir. 1997)(quoting Celotex Corp. v. Edwards, 514 U.S. 300, 305-07, 115 S. Ct. 1493, 1498, 131 L. Ed.2d 403 (1995)).

---

[4] If this Court permits the amendment, the defendants believe that justice requires the plaintiffs to be required to post a bond for the benefit of NADIF and Leeds Federal. To permit the amendment without a bond would enable the plaintiffs to, in effect, enjoin a sale duly ratified and confirmed by the Circuit Court, with no protection against losses they will suffer.

#339699                                   9

Spartan Mills is instructive. There a bank had sold equipment of a bankruptcy debtor pursuant to an order of the bankruptcy court. The plaintiff, another creditor, filed a federal district court action against the bank seeking the proceeds and claiming that it had a superior lien to that of the bank. In granting summary judgment to the defendant bank, the district court held that the plaintiff was collaterally estopped from relitigating the issue of priority lien position because the bankruptcy court had already decided that same issue. See Spartan Mills, 112 F.3d at 1254. The court further held that the 'determination[] of the validity, extent, or priority of liens' was at the heart of [the] bankruptcy case and '[a]ll of the corporation's Chapter 11 financing was dependant on the bank's first lien position, and the later sale of the estate's assets could not have been completed if a valid claim of possessory lien had been interposed.'" Id.

The plaintiffs here seek to challenge the validity of the Venture Agreement and NADIF's lien on the plaintiffs' property. But the bankruptcy court approved the Venture Agreement, and, as in Spartan Mills, the bankruptcy court approved and authorized the lien that is the subject of the proceedings. Wyndholme Village could not have continued with its reorganization efforts without the bankruptcy court's approval. Indeed, all of the financing for the Wyndholme project was dependent on the bankruptcy court's approval of the Venture Agreement and the granting of the super priority lien in favor of NADIF.

Moreover, in affirming the district court's opinion in Spartan Mills, the Fourth Circuit further reasoned that the plaintiff had an opportunity to challenge the bankruptcy court's order either by objecting to or appealing the order and failed to do so. Id. at 1256. Again, as in Spartan Mills, Wyndholme Village had the option of challenging the 1999

bankruptcy court order. Not only could it have objected to or appealed the order, but it could have filed a motion pursuant to Federal Rule of Civil Procedure 60. That rule states in part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

Wyndholme Village never filed such a motion.

Not only did Wyndholme Village fail to appeal from or file a motion challenging the 1999 bankruptcy court Order, the plaintiffs voluntarily entered into a Consent Order on October 16, 2000 (the "Consent Order") that permitted either NADIF or WVI to foreclose on their respective liens in the event that the plaintiffs failed to comply with the negotiated terms of repayment. See Exhibit F. The Consent Order is a final order that Wyndholme has never attempted to appeal or challenge. Moreover, on April 14, 2003, the Bankruptcy Court reaffirmed the validity and enforceability of NADIF's lien in responding to Wyndholme's attack on the Consent Order by arguing that NADIF's foreclosure sale should be stayed by Wyndholme Village's bankruptcy filing. See, Exhibit L. Judge Derby, the same judge who approved the Venture Agreement and granted the super priority lien in favor of NADIF in 1999, held that he would take no action that would invalidate NADIF's foreclosure proceedings.

The Circuit Court has also declined to intervene to stop NADIF's foreclosure sale on the grounds that to do so would constitute an impermissible collateral attack on the 1999 Bankruptcy Court Order. On November 27, 2002, Wyndholme Village filed a Motion to Enjoin the Foreclosure Sale and a companion Motion for a Temporary

Restraining Order in the Circuit Court for Baltimore City claiming that the Venture Agreement and the 1999 Bankruptcy Court Order were obtained as a result of fraud. In denying Wyndholme Village's request for an injunction, Judge Kaye Allison held that, if Wyndholme Village wanted to challenge the validity of the Venture Agreement and subsequent liens on the basis of fraud, the proper course of action would have been for it to have filed a motion in the Bankruptcy Court. Judge Allison ruled that Wyndholme Village was now collaterally estopped from challenging the 1999 Bankruptcy Court Order in a subsequent action before a different court. See Exhibit K.

Later, Wyndholme Village filed objections to the ratification of the foreclosure sale alleging, among other things, that the lien was void because the deed of trust was obtained by fraud. Judge Themelis of the Circuit Court denied the plaintiffs' objections and ratified the sale. See Exhibit M.

All of these were failed attempts by Wyndholme to do one thing: stop the sale of the property at foreclosure. The plaintiffs are now attempting to get another bite at the apple through this Court. That should not be allowed.

     **D.**    **The Plaintiffs Waived Their Right To Seek Rescission Of The Venture Agreement.**

Assuming, arguendo, that one or more of the plaintiffs have the right to rescind the Venture Agreement pursuant to which Wyndholme Village sought and obtained the bankruptcy court's approval of the NADIF super priority lien, the plaintiffs have waived the right for at least two reasons (in addition to those addressed elsewhere in this opposition). First, under Maryland law, when a party to a contract discovers that he or she may have a claim for fraud or breach of contract, that party has a right either to retain the contract and collect damages or rescind the contract. See Merritt v. Craig, 130 Md.

App. 352, 365, 746 A.2d 923, 931 (2000).  "'These rights [are] inconsistent and mutually exclusive, and the discovery [of the breach] put[s] the purchaser to a prompt election.'" Id. (quoting Wolin v. Zenith Homes, Inc., 219 Md. 242, 251 (1959), cert. denied, 362 U.S. 831 (1959).  More than eighteen months ago, the plaintiffs filed the original complaint, alleging fraud and seeking damages.  At that time the plaintiffs were aware of the facts upon which they now seek rescission, see discussion at n.1 supra, but failed to bring such a rescission claim or to notify the defendants that they might seek to pursue such a claim.  The election by the plaintiffs to do so now comes too late.  See Baumel v. Rosen, 412 F.2d 571, 574 (D. Md. 1969) (substantial delay in bringing rescission claim constitutes a waiver).

Second, the plaintiffs failed to allege that they tendered, or even offered to tender, to the defendants all of the consideration and benefits received by them under the contract.  Under Maryland law, tender is a necessary precondition to seeking the equitable remedy of rescission.  (Merritt v. Craig, 130 Md. App. 352, 360 (Md. App. 2000) ("Rescission requires, at a minimum . . . an unconditional willingness to return to the other party both the consideration that was given and any benefits received.")  See also Ray v. Citifinancial, Inc., 228 F. Supp. 2d 664, 667-68 (D. Md. 2002), Benjamin v. Erk, 138 Md. App. 459, 482, cert. denied, 364 Md. 461 (2001), and Lazorcak v. Feuerstein, 273 Md. 69, 75-76 (1974).  In paragraph 15 of the proposed amended complaint, the plaintiffs acknowledge that "NADIF lent the $750,000 to Plaintiffs." Although not in the complaint, the undisputed fact is that, in addition to the $750,000, NADIF lent Wyndholme Village another $150,000 (unsecured) and lent plaintiff James Lancelotta $100,000.  See Exhibit K (Venture Agreement) at ¶¶ 2 ands 4.  And, WVI

paid over $1 million to acquire the Metropolitan Bank loan, which Wyndholme Village is obligated to repay.  Id. at ¶ 23.  Finally, in addition, NADIF provided Wyndholme Village with other cash advances totaling over $300,000.  The purpose of rescission is to put the parties back in a status quo position.  An absolute requirement for rescission, then, is that the party seeking rescission repay the amounts received by it from the defendant under the contract.  The complaint does not allege that such a tender has been made and, obviously, it could not.  Plaintiff Wyndholme Village has only this case as an asset, and plaintiff James Lancelotta have publicly stated that he is penniless.  See Baltimore Sun Article, Exhibit N.

The motion to amend to add a rescission claim should be denied, then, because the amendment would be futile.

### E. Leeds Federal is a Necessary Party, to the Extent that Rescission of the NADIF Lien is Sought.

Leeds Federal purchased the Wyndholme Village Property at foreclosure on December 3, 2002.  The sale was ratified and confirmed over the objections of Wyndholme Village.  See Exhibit M.  As the contract purchaser at the sale, Leeds Federal now holds equitable title to the Wyndholme Village property.  If the plaintiffs were allowed to rescind the Venture Agreement, and NADIF's lien, the effect would be to eliminate Leeds Federal's equitable interest, as a contract purchaser.

Federal Rule of Civil Procedure 19 requires that indispensable persons be joined in litigation pending before the federal court.  See International Paper Co. v. Denkman Associates, 116 F.3d 134 (5th Cir. 1997).  In International Paper, the Fifth Circuit affirmed the trial court's dismissal of the case based on the finding that a person who owned part of the land at issue was an indispensable party to the lawsuit.  As in

International Paper, Leeds Federal holds an equity interest in the Wyndholme Village property and, as such, must be joined in this lawsuit if the rescission remedy is permitted to go forward. The failure of the plaintiffs to include Leeds Federal, a necessary party, in its proposed amendment is another reason to deny the motion to amend.

### III.   The Other Remedies Sought by the Amendment Are Duplicative of the Attachment Remedy Already Sought by the Plaintiffs.

The amended complaint would add claims for "constructive trust" and "receivership." Both remedies are sought with respect to the proceeds of the NADIF foreclosure sale. In other words, the plaintiffs' would seek a constructive trust over the proceeds and/or the appointment of a receiver with respect to those proceeds. In either case the plaintiffs would have this Court exercise control over the distribution of the proceeds. There are two answers to this proposed action.

The first is that the proceeds are already under the control of the Circuit Court, which has procedures in place to protect those who purport to have claims in foreclosure proceedings. There no need for this Court to inject itself into the process.

The second is that the plaintiffs have recently filed, in this action, a request for an attachment on original process. The attachment would, in essence, provide the same remedy that the plaintiffs would add to their complaint: judicial control over the proceeds.

The attachment proceeding is the appropriate vehicle to resolve the parties' respective rights, prejudgment, to the proceeds. The defendants will shortly file an opposition to the attachment motion that will fully explain why the plaintiffs are not entitled to the prejudgment relief they seek.

### IV. The Plaintiffs' Breach of Contract Cause of Action is Confusing and Fails to Allege the Essential Elements of the Claim.

Finally, the proposed amendment purports to add a "breach of contract" theory to the plaintiff's original fraud allegations--without changing any of those allegations. To maintain an action for breach of contract, a plaintiff must allege the existence of a contractual obligation owed by the defendant to the plaintiff and the material breach of that obligation. See Continental Masonry Co. v. Verdel Constr., 279 Md. 476, 480, 369 A.2d 566, 569 (1977). While the plaintiffs allege the existence of a written contract between the parties and various verbal representations, nowhere in the proposed amended complaint do the plaintiffs allege precisely what contract was breached, what provision of the contract was breached, or how the provision was allegedly breached. It is not even clear whether the plaintiffs' claim is based on a written contract or the claimed oral representations. Perhaps some of the confusion may have been alleviated had the plaintiffs pled the breach of contract allegation(s) in a separate count from the fraud allegations, as is generally required, at least in state court pleading. In any event, the identification of a contract and a description of the alleged breach is fundamental to the proper pleading of a breach of contract claim. The proposed amended complaint fails to specifically allege either. If the amendment were allowed, Count I would be dismissed for its failure properly to plead the new contract claim. The amendment, then, would be futile and should not be allowed.

#339699                                    16

## CONCLUSION

For the foregoing reasons, the defendants respectfully request that this Court deny the plaintiffs' motion to amend the complaint.

                                    /s/
William C. Sammons, Bar No. 02366
Stephen M. Goldberg, Bar No. 01156
  Tydings & Rosenberg LLP
  100 East Pratt Street
  26th Floor
  Baltimore, Maryland  21202
  (410) 752-9700

Attorneys for Defendants and Counterplaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of May, 2003, a copy of the foregoing Memorandum in Opposition to Motion to Amend Complaint was sent by first class mail, postage prepaid to:

>Howard J. Schulman, Esquire
>Schulman & Kaufman, LLC
>One Charles Center
>100 North Charles Street
>Suite 600
>Baltimore, Maryland 21201
>*Attorneys for Plaintiffs and Counterdefendants*
>
>Howard "Rusty" Zukerman
>62 Terrehans Lane
>Syosset, New York 11791
>*Defendant*
>
>Stuart C. "Neil" Fisher
>173 Root Trail
>Palm Beach, FL 33480
>*Defendant*

               /s/
        William C. Sammons