IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WYNDHOLME VILLAGE, LLC, *et al.*,   *

    Plaintiffs   *

v.   *   CIVIL ACTION NO.: 01-3809

NADIF OF WYNDHOLME, LLC, *et al.*,   *

    Defendants   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM IN OPPOSITION TO
MOTION TO DISMISS BY DEFENDANT ZUKERMAN

Plaintiffs, Wyndholme Village, LLC, James Lancelotta and Katherine Lancelotta, by their attorneys, Howard J. Schulman and Schulman & Kaufman, LLC, in opposition to the Motion to Dismiss of Defendant Zukerman, state as follows:

Defendant Zukerman attacks the Complaint on the basis of Fed.R.Civ.P. 9(b).[1] Zukerman complains that the Plaintiffs have "group[ed] all of the Defendants together without linking each Defendant to an alleged fraudulent act." *See* Zukerman Memorandum, at 2. Zukerman also claims that Plaintiffs have failed to identify the speaker of the fraudulent representations.

---

[1] The Complaint was filed in state court and, therefore, the Federal Rules do not apply to procedural compliance with the Federal Rules. *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253 (4th Cir. 1987)(holding that the Federal Rules of Procedure are not applicable to complaints in state courts, particularly in a Rule 11 context). Nonetheless, the Maryland pleading requirements do not appear materially different. *See e.g. Wooddy v. Wooddy*, 256 Md. 440 (1970); *Parish v. Maryland & Virginia Milk Producers Ass'n*, 250 Md. 24 (1968), appeal after remand 261 Md. 618, *cert. denied* 404 U.S. 940 (1971).

Judge Garbis, in *Superior Bank, F.S.B. v. Tandem National Mortgage, Inc.*, 197 F.Supp. 2d 298, 314 (2d Cir. 1998)(D.Md. 2000), succinctly stated the principles governing Fed.R.Civ.P. 9(b).  After noting that a Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) should not be granted unless it appears beyond doubt that the plaintiff would not be entitled to relief, the Court stated:

> Rule 9(b) provides that "in all averments of fraud[,] the circumstances constituting fraud ... shall be stated with particularity." Fed. R. Civ. P. 9(b). The word "circumstances" is interpreted to include the "time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby." *Windsor Assocs. v. Greenfield*, 564 F. Supp. 273, 280 (D. Md. 1983). Rule 9(b) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which demands only "a short and plain statement of the claim," and with the Federal Rules' policy in favor of flexibility and simplicity in pleading. *See All Risks, Ltd. v. The Equitable Life Assurance Soc'y*, 931 F. Supp. 409, 418 (D. Md. 1996); *PPM Am., Inc. v. Marriot Corp.*, 820 F. Supp. 970, 973 (D. Md. 1993). The central question which arises when a complaint is attacked under 9(b) "is how much detail is necessary to give adequate notice to the opposing party in order to enable that party to prepare adverse pleadings." *PPM*, 820 F.Supp. at 973. [197 F.Supp. 2d at 314]

Here, the Plaintiffs have clearly fulfilled their obligation under Fed.R.Civ.P. 9(b) to Defendant Zukerman.

The Complaint in this sets forth the time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and the objectives thereof.  Paragraphs 1 through 11 set forth the background of the fraud, including a detailed recitation of the background of the three individual Defendants in the

context of the misrepresentations alleged.[2]  *See* Complaint, ¶¶ 1-11. While the trail of

---

[2]In support of the Motion for Attachment Before Judgment or, In the Alternative, for Temporary Restraining Order and Preliminary Injunction Freezing Defendants' Assets (Paper No. 54), Plaintiffs submitted evidence of the following:

On May 19, 1994, Quinn filed a Voluntary Petition under Chapter 7 in the United States Bankruptcy Court for the Southern District of Florida (Case No. 94-21941) by which, on August 14, 1997, he discharged approximately $2.8 million in debt, including an IRS lien in the amount of $1,792,546.11.  On August 17, 2000, Quinn filed a Voluntary Petition under Chapter 7 in the United States Bankruptcy Court for the Eastern District of Virginia (Alexandria) (Petition No. 00-13441), by which, on December 12, 2000, he discharged $3,810,519.53 in debt, including New York State and IRS tax claims totaling $2,727.268.69.  Quinn has not filed a federal tax return in over five years.  Quinn has no real or personal property or assets in his own name.  Quinn at present holds himself out as having no assets, income or visible support other than the charity of his son, John J. Quinn.

On August 14, 1995, Fisher filed a Voluntary Petition under Chapter 7 in the United States Bankruptcy Court for the Eastern District of New York (Brooklyn) (Petition No. 95-16927).  Among the $16,649,806.05 in total liabilities, Fisher listed $2.4 million owed to the Internal Revenue Service and $175,000 to the State of Virginia Department of Taxation.  On August 20, 2001, Fisher again filed a Voluntary Petition under Chapter 7, albeit in the United States Bankruptcy Court for the Middle District of Florida (Gainesville) (Petition No. 01-00539), and was discharged on December 20, 2001.  Fisher listed a $1,028,228.48 claim by the Internal Revenue Service of the total $1,053,928.48 in liabilities.

Defendant Fisher has no real or personal property or assets titled in his own name.  Fisher maintains all business assets in the name of his wife, Tamara J. Fisher, in single purpose entity corporations and limited liability companies, such as, for example, 1060 Brickell Partners, LLC, One Harborview, Inc. (formerly NADIF of Florida, Inc.) and Harbor Holdings, Inc. (formerly NADIF of Inner Harbor, Inc.).

Neither Fisher nor Quinn listed their respective interests in the instant transaction, 1060 Brickell AvenueVenture, LLC or in the Baltimore Harbor venture as assets in their bankruptcy filings in Case Nos. 00-13441 and 01-00539.  Fisher, Quinn and Zukerman have secreted their assets, as set forth herein, for purposes of hiding them from the Bankruptcy Courts, the Internal Revenue Service and other creditors.

(continued...)

fraud left behind by Fisher and Quinn are recited in ¶¶ 2 & 3 of the Complaint, ¶ 4 of the

Complaint states in pertinent part:

> Defendant **Zukerman is Fisher's business partner**. Fisher, as a matter of course, held Defendant Zukerman out as the Chief Financial Officer of North American Doctors Investment Fund with particular expertise in real estate development. Zukerman, an accountant, has recently pled guilty to tax fraud. (Emphasis added.)

Paragraph 14 of the Complaint alleges that Fisher, in the presence of Zukerman, made

certain representations in the presence of Lancelotta. In particular, according to ¶ 12 of the

Complaint, statements made by Fisher in the presence of Zukerman were:

> In June 1999, Defendants approached Plaintiff James M. Lancelotta and represented that they were successful developers and had the financial resources and strength to fund a loan of millions of dollars to the Plaintiffs for the completion of the development of the property for the project. More specifically, Defendants told Lancelotta that they were the individuals who were developing the inner harbor Ritz-Carlton and had provided $40 million for the inner harbor Harborview project. Defendant Fisher told Lancelotta that the

---

[2](...continued)
On September 8, 1999, Defendant Zukerman was indicted on eight counts of tax fraud in *United States of America v. Zukerman* (Case No. 99-CR-836 (E.D. N.Y.) (Uniondale)) and pled guilty to four of the counts on April 30, 2001. At present, Defendant Zukerman has IRS and New York State tax liens levied against him in amounts totaling $327,110. On April 16, 2002, Defendant Zukerman was also indicted in *United States of America v. Hundley, et al.* (Case No. 02-CR-441-5 (S.D. N.Y.) (White Plains)), related to using straw and shell entities to defraud five financial institutions of $42.4 million and tax evasion. Pursuant to 18 U.S.C. § 982, the Government seeks in the indictment to hold Zukerman and his five co-defendants jointly and severally liable for the $42.5 million and the forfeiture of all personal assets to the extent of the $42.5 million. Superseding indictments were subsequently filed on July 11, 2002 and November 21, 2002. This case is still pending.

> Defendants were interested in assisting him with the development of Wyndholme Village. **Fisher, in the presence of Quinn and Zukerman**, told Lancelotta that the three of them were successful and reputable developers and were principals of North American Doctors Investment Fund, which Fisher told Lancelotta had assets in excess of $500 million. Fisher told Lancelotta that North American Doctors Investment Fund would be able to obtain the millions of dollars required to pay off the existing debt and to finance the completion of the project. Fisher also told Lancelotta that if NADIF could not obtain financing from a third party, NADIF had more than enough assets to make the loan itself. Fisher told Lancelotta that North American Doctors Investment Fund always operated through single purpose subsidiaries, which, in this case, would be NADIF. Fisher described to Lancelotta his role in North American Doctors Investment Fund and NADIF as that of being the rainmaker for investment funds, that Quinn was a successful and highly regarded real estate developer and that Zukerman brought with him particularized financial expertise in implementing financing for projects such as Wyndholme. (Emphasis supplied.)

The beginning portions of the paragraph No. 12 allege that the Defendants, which would include Zukerman, made representations concerning the Defendants' collective success and financial resources. Additionally, the paragraph goes on to allege that Fisher made certain representations to the same effect to Lancelotta in the presence of Zukerman. Fisher, so it may be inferred from the facts alleged and from the averment in ¶ 4 of the Complaint that Fisher held Zukerman out as his partner, spoke on behalf of Zukerman and/or with Zukerman's acquiescence. *See* Fed.R.Evid. 801(d)(2)(B), (C), (D), (E).[3]

---

[3]Fed.R.Evid. 801(d)(2) states:

(d) Statements which are not hearsay. A statement is not hearsay if--

(continued...)

Paragraph 16 of the Complaint goes on to allege that the Defendants, which would include Zukerman, knew their representations, i.e., made by Fisher on their behalf as alleged in ¶ 12 and subsequent paragraphs, to be false. In particular, ¶ 16 states:

> Plaintiffs aver that, at all times, the Defendants acted for the sole purpose of obtaining sole control of the project and then selling the land and development rights to others at a profit of approximately $6.2 million. Defendants knew that their representations that they were successful and reputable developers, that North American Doctors Investment Fund and NADIF had assets in excess of $500 million and had the financial wherewithal to pay off the existing debt and complete the project, were false. Defendants knew their representations that they intended to obtain funding to complete the project from third parties or, alternatively, issue a commitment for a construction loan themselves were false. Fisher, Quinn and

---

[3](...continued)

(2) Admission by party-opponent. The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), the agency or employment relationship and scope thereof under subdivision (D), or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

See also Advisory Committee Notes.

> Zukerman had no intention of building Wyndholme and covered up Quinn's conviction. Rather, Defendants made these false representations for the purposes of gaining control of the project and securing liens on the property, in order to get control of the property and/or contract to purchase the property at foreclosure and then sell or "flip" their contractual interest in the property at a profit of approximately $6.2 million, after eliminating Plaintiffs from the project. Plaintiffs relied upon the Defendants' representations and would not have otherwise become involved with Defendants, entered any agreement with NADIF or WVI, L.C.C. or sought a priority or senior lien from the Bankruptcy Court, had Plaintiffs known of Fisher's or Quinn's past.

Defendant Zukerman focuses in upon Fisher's representation as to the individual Defendants' skill and expertise. Defendant misses that this case in essence is not about the skills of the individual Defendants, but the fact that they represented that they had assets and financial wherewithal, as well as successes, that they did not have. Defendants also miss the thrust of this case that they did not intend to obtain funding to complete the project as they had represented or, alternatively, did not intend to issue a commitment but simply acted for purposes of gaining control of the entire project in order to "flip it" after eliminating Plaintiffs from the project. Clearly, these allegations are sufficient averments of fraud. *Edell & Associates, P.C. v. Law Offices of Peter Angelos*, 264 F.3d 424, 444-46 (4th Cir. 2001).

      Howard J. Schulman
      Schulman & Kaufman, LLC
      One Charles Center, Suite 600
      100 N. Charles Street
      Baltimore, Maryland 21201
      (410) 576-0400

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th day of June, 2003, a copy of the foregoing Memorandum was mailed first-class, postage prepaid, to Stuart C. Fisher, 173 Root Trail, Palm Beach, Florida 33480.

_____
Howard J. Schulman