IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **WYNDHOLME VILLAGE, LLC,** *et al.* | * | |
| Plaintiffs and Counterdefendants | * | |
| v. | * | CIVIL ACTION NO. L01-3809 |
| **NADIF OF WYNDHOLME, LLC,** *et al.* | * | |
| Defendants and Counterplaintiffs | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE AMENDED COUNTERCLAIM**

NADIF of Wyndholme, LLC ("NADIF"), one of the counterplaintiffs, has moved for summary judgment on Counts I and II of the amended counterclaim against Wyndholme Village, LLC ("Wyndholme Village"), James M. Lancelotta ("Lancelotta") and Katherine A. Lancelotta ("Mrs. Lancelotta") ("counterdefendants"), in the above case. This memorandum will explain why summary judgment against the counterdefendants is now required.[1]

**INTRODUCTION**

The disputes in this case center on a failed real estate development in Baltimore City known as Wyndholme Village. Wyndholme Village, the "vision" of counterdefendant Lancelotta, was to be a retirement community for the deaf and hard-of-hearing community. For more than four years, Lancelotta attempted to persuade

---

[1] This partial motion for summary judgment incorporates by reference the facts contained in the Defendants' Motion for Summary Judgment, filed contemporaneously herewith, requesting judgment in favor of certain of the defendants on all claims brought by the plaintiffs in this action. The exhibits referred to in this memorandum are attached to the memorandum in support of the Defendants' Motion for Summary Judgment, and are identified by the numbers used in that memorandum.

institutional and private investors to provide the funding necessary to bring his "vision" to fruition, approaching more than 30 prospective investors/lenders between September 1998 and June 1999.  Only one of those 30-plus prospects invested in Lancelotta's "vision."  That one was a development group consisting of the counterplaintiffs in this case.  In August 1999, NADIF entered into an agreement with Lancelotta and Wyndholme Village and, consistent with obligations undertaken in that agreement, it and WVI, LLC provided funds, as loans, to the project exceeding $2 million.  In spite of that infusion of cash, the project did not go forward and not one penny has been repaid.

NADIF, and the other counterplaintiffs, filed an amended counterclaim.  In it, NADIF alleges, among other things, that the counterdefendants breached their contract with NADIF when they failed to repay the moneys lent to them pursuant to the parties' agreement.  Specifically, count I alleges that Wyndholme has failed to repay the $750,000 super priority lien and the unsecured loan of $150,000, and count II alleges that Mr. and Mrs. Lancelotta have failed to repay the personal, unsecured loan of $100,000 that NADIF made to them.

The counterdefendants claim in their amended complaint that they were misled into taking NADIF's money, but for the reasons discussed in the Defendant's Motion for Summary Judgment filed contemporaneously herewith, they cannot prove their claims. Moreover, the material facts underlying counts I and II of NADIF's amended counterclaim are undisputed.  Thus, NADIF is entitled to judgment as a matter of law.

## STANDARD OF REVIEW

Under Rule 56(c), a court must grant the moving party's motion for summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." See Fed. R. Civ. P. 56(c). Although the court must consider the facts in the light most favorable to the nonmoving party, where no rational trier of fact would find for the nonmoving party, there is no genuine issue for trial and summary judgment is warranted. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Though the burden of proof rests initially with the moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the nonmoving party must produce "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

## ARGUMENT

If the terms of a contract are clear, the Court must enforce the contract in accordance with those terms. Holzman v. Blum, 125 Md. App. 602 (1999); Calomiris v. Woods, 353 Md. 425 (1999). The August Venture Agreement is clear. It obligates NADIF to "make to Wyndholme . . . a loan in the principal amount of [$750,000] bearing interest at a rate of 11% per annum"; to "make a loan to Lancelotta in the principal sum of [$100,000];" and to "make a loan to Wyndholme in the principal sum of [$150,000]." See Exhibit 16, August Venture Agreement, ¶¶ 2, 3, 4.[2]

---

[2] The August Venture Agreement assigned an 11% rate to all of the loans, except that it assigned a 14% default interest rate to the $750,000 secured loan.

The August Venture Agreement also sets the terms for repayment of the above loans. It states that the $750,000 secured loan to Wyndholme must be repaid to NADIF on the earlier of "(a) the closing and initial funding of a construction loan . . . (b) two years following the effective date of the [promissory note], or (c) upon a liquidation or bulk sale of all or a portion of the [Wyndholme Village] Property." Id. at ¶ 3. It further states that the $100,000 personal, unsecured loan to Mr. and Mrs. Lancelotta must be repaid to NADIF on the earlier of "(i) two years following the closing and initial funding of the Phase 1A Construction Loan, or (ii) two years following the effective date of the [loan]." Id. at ¶ 4. Finally, it states that the $150,000 unsecured loan to Wyndholme must be repaid to NADIF on the earlier of "(i) funding of the Phase 1A Construction Loan, or (ii) one year following the effective date of the [loan]." Id.

Significantly, Lancelotta admits or does not controvert the following material facts:

- NADIF made the $750,000 super-priority loan to Wyndholme as contemplated by the August Venture Agreement and authorized by the Bankruptcy Court. See Amended Complaint ¶ 15.[3]

- Lancelotta, on behalf of Wyndholme, executed and delivered to NADIF a promissory note dated October 22, 1999, in the principal amount of $750,000. See Promissory Note, attached as Exhibit 43.

- NADIF made unsecured advances of over $150,000 to Wyndholme as contemplated by the August Venture Agreement and authorized by the

---

[3] At the January 11, 2000 hearing in the Bankruptcy Court, Lancelotta admitted that NADIF made the $750,000 loan, that the loan was bearing interest at a non-default rate of 11%, and that no payments had been made. See Exhibit 1 at 239-40.

- Bankruptcy Court.  See Exhibit 1, Bankruptcy Hearing 1/11/99 Transcript, at 175-176.
- NADIF made a $100,000 personal loan to Lancelotta and his wife as contemplated by the August Venture Agreement and authorized by the Bankruptcy Court.  See Exhibit 12, Stephen Garchik Deposition Transcript, at 98-99.

As shown by these uncontroverted facts, NADIF fully performed its obligations to make loans to Wyndholme and the Lancelotta's under the August Venture Agreement.

Moreover, Lancelotta testified in his deposition that these loans remain unpaid and accruing interest.  See Exhibit 2 at 420-26.  As of June 7, 2002, the time of the filing of the amended counterclaim, the balance due (including accrued and unpaid interest) on the super priority $750,000 secured loan was $986,007.22; on the unsecured loan to Wyndholme Village was $196,345.89; and on other advances made under the agreement was $546,996.20.  See Amended Counterclaim ¶ 22 and Exhibit 36, Lancelotta Interrogatory Responses, Response to Request No. 16.  The amount due from the Lancelottas (including interest as of June 7, 2002) totaled $134,727.00.  See Amended Counterclaim ¶ 24.

Thus, the plaintiffs admit that NADIF made these loans, and that they have failed to repay the loans as required by the August Venture Agreement.  Accordingly, the Court should grant summary judgment to NADIF on counts I in the amount of $1,729,092.87 and II in the amount of $134,727.00, both figures plus interest since June 7, 2002, and attorneys' fees.

## **CONCLUSION**

For the foregoing reasons, NADIF respectfully requests that the Court enter summary judgment on counts I and II of the amended counterclaim in its favor.

/s/   *William C. Sammons*
William C. Sammons, Bar No. 02366
Stephen M. Goldberg, Bar No. 01156
　Tydings & Rosenberg LLP
　100 East Pratt Street
　26th Floor
　Baltimore, Maryland  21202
　(410) 752-9700

Attorneys for Defendants and Counterplaintiffs