1

1

2  IN THE UNITED STATES DISTRICT COURT

3  FOR THE DISTRICT OF MARYLAND

4  ------------------------------X
   WYNDHOLME VILLAGE, LLC, et al.

5

6        Plaintiffs and
         Counter-Defendants,
7                         Civil Action No.
                          L01-3809
8
            vs.
9
   NADIF OF WYNDHOLME, LLC, et al.

10

11        Defendants and
          Counter-Plaintiffs.
12  ------------------------------X

13

14

15        DEPOSITION OF HOWARD ZUKERMAN

16          New York, New York

17         Monday, July 14, 2003

18

19

20

21

22

23  Reported by:
    HOWARD CHAIM CSR
24  CSR NO. 792
    JOB NO. 150713
25

10

1          Howard Zukerman

2      A.   Let's see.  After the accounting firm

3    it was a company called Program Tax Systems and

4    Program Bookkeeping Systems.  After that it was

5    a company called Frigetemp Corporation, which I

6    then got transferred to Frigetemp International.

7    I may be missing something in between.  I am not

8    sure.

9          After Frigetemp was Bear, Stearns.

10   And then I worked with two syndicators as a

11   third -- as an outside consultant.  And then

12   after that other things that I am going to plead

13   the Fifth on.

14      Q.   I think you indicated that there was

15   some suggestion you might be taking the Fifth

16   for a number of questions.  It's probably easier

17   to say Fifth Amendment.

18      A.   Than to go through the whole litany.

19      Q.   The entire litany which it would be

20   that you decline to answer a question on the

21   grounds it might incriminate and you are

22   exercising your right under the Fifth Amendment.

23          So with counsel's permission if we

24   can simply just use that as a shorthand for that

25   litany unless we want to do the whole thing each

13

1          Howard Zukerman

2   number of 99 CR 836.  Was that the first case

3   that we were referencing?

4      A.   Fifth Amendment.

5      Q.   Did you in that case plead guilty to

6   any counts that were alleged against you by the

7   United States government?

8      A.   Fifth Amendment.

9      Q.   I take it pursuant to the colloquy

10   between counsel and I that you will take, as

11   well as a prior discussion, that you are going

12   to take the Fifth Amendment for all questions

13   related to the matter related to case 99 CR 836?

14          MR. SAMMONS:  That's correct.

15          Off the record for a second.

16          (Discussion off the record.)

17          MR. SCHULMAN:  Don't we need to get

18   the witness to say Fifth Amendment?

19          MR. SAMMONS:  On your question about

20   whether this -- all questions relating to

21   this matter would result in the assertion of

22   the privilege?

23          MR. SCHULMAN:  Yes.

24          MR. SAMMONS:  I prefer having him say

25   nothing other than Fifth Amendment.

14

1          Howard Zukerman

2          MR. SCHULMAN:  Yes, Fifth Amendment.

3    That's fine.

4          MR. SAMMONS:  Yes.  You assert the

5    Fifth Amendment privilege, is that correct?

6    A.   Fifth Amendment.

7          MR. SCHULMAN: Just that we all

8    understand, I just need to make record.

9    That's all.

10    Q.   I also understand that -- let me ask

11   you this.  Are you presently under indictment

12   for any matters pending in the Southern District

13   of New York and specifically in the case

14   docketed 02 CR 441-5?

15    A.   Fifth Amendment.

16    Q.   I take it you will also plead the

17   Fifth Amendment for all matters alleged in the

18   indictment in that case?

19    A.   Fifth Amendment.

20    Q.   Apart from the employers that you

21   have indicated -- I should say when did you

22   complete your employment with Bear, Stearns?

23    A.   1985.

24    Q.   Was that the last time you received a

25   W-2?

15

1          Howard Zukerman

2     A.   From them?  Probably.  Yes.

3     Q.   Subsequent to your employment at

4   Bear, Stearns did you receive a W-2 from any

5   other entity?

6     A.   Subsequent, Fifth Amendment.

7          Off the record?

8          MR. SAMMONS:  You can't go off the

9   record.

10    A.   Sorry.

11         MR. SAMMONS:  Only we can do that.

12    Q.   I believe you indicated you were

13  involved in consulting work after Bear, Stearns.

14  Can you outline the consulting work you did

15  after leaving Bear, Stearns?

16    A.   First of all, I don't think I ever

17  said that.  Second of all, Fifth Amendment.

18    Q.   What did you say then?

19    A.   What did I say?

20    Q.   If you don't understand the question

21  tell me.  I thought you had said that you didn't

22  say that.  And I was trying to get you to

23  clarify what you meant.  I understood your

24  earlier testimony to be that after working for

25  Bear, Stearns you had a number of consulting

16

1          Howard Zukerman

2   types of employment?

3      A.   I am sorry, oh, yes, you are right.

4   You are right.  Then it wasn't '85.  I

5   apologize.  It was about '80 -- wait a minute.

6   I am confused.  Hold on a second.  Switch that.

7   From '80 to '82 I think it was.  It was a

8   consulting business.  I apologize.  The other

9   way around.  Bear, Stearns, from then till '85.

10      Q.   What did you do career-wise after

11   Bear, Stearns?

12      A.   Fifth Amendment.

13      Q.   You are you going to exercise the

14   Fifth Amendment for all employment or career

15   activities after Bear, Stearns?

16          MR. SAMMONS:  May I consult with him?

17          MR. SCHULMAN:  Absolutely.

18          (Witness confers with counsel.)

19      A.   Okay.  While at Bear, Stearns -- let

20   me give you a little bit of background.  While

21   at Bear, Stearns and prior to Bear, Stearns I

22   was involved in raising equity and debt for real

23   estate companies and involved in construction

24   overseas where I was -- I set up the financing

25   and the accounting systems for a company that

17

1          Howard Zukerman

2    was doing construction overseas.

3          After Bear, Stearns I was involved in

4    raising money for various entities.  I was

5    involved with raising money for various

6    entities, period.

7      Q.   What were those entities?

8      A.   Fifth Amendment.

9      Q.   Apart from those endeavors were there

10   any other employment or professional activities

11   that you were involved in?

12     A.   Please clarify.

13     Q.   Well, I am trying to find out -- I am

14   trying to understand what you have done from the

15   time that you left Bear, Stearns and for whom

16   you have done it to present.  And if there is

17   anything else that you can tell us without

18   exercising the Fifth Amendment, that's what I

19   want to know.

20     A.   I did.  I told you that I raised

21   money for various entities, for real estate

22   projects specifically, both development-wise and

23   existing projects.

24     Q.   And can you tell us the projects that

25   you have raised money for?

114

1        Howard Zukerman

2    Q.   Audit confirmation?

3    A.   A u d i t.  Audit.

4    Q.   And those were moneys that were

5  disbursed by Gotham?

6    A.   Yes, sir.

7    Q.   What were the dates that you were, if

8  you were, incarcerated in a federal facility?

9        MR. SAMMONS:  Involving Fifth

10     Amendment.

11        MR. SCHULMAN: Why would that be Fifth

12     Amendment?

13        MR. SAMMONS:  Anything relating to the

14     cases that we have discussed are subject to

15     the privilege.

16    Q.   Was there ever a time that you were

17  not a participant in the management team of

18  NADIF of Wyndholme, LLC?

19    A.   Fifth Amendment.

20    Q.   Did Mr. Quinn ever tell you who

21  represented him with regard to his misdemeanors?

22    A.   No.

23    Q.   Did he say where those misdemeanor

24  charges were filed against him?

25    A.   I don't think so.

115

1       Howard Zukerman

2   Q.   Specifically in the case United

3  States versus Howard Zukerman, Case Number 99 CR

4  00836 in the United States District Court for

5  the Eastern Division in Uniondale, did you plead

6  guilty to counts 1 through 4 of the amended --

7  strike that.

8       Did you plead guilty to counts 1

9  through 4 of the indictment?

10   A.   Fifth Amendment.

11   Q.   Again with regard to case Case Number

12  99 CR 836 were you in prison for a period of 12

13  months and one day?

14   A.   Fifth Amendment.

15   Q.   Pursuant to the judgment entered in

16  the case number Case Number 99 CR 836 did you

17  serve a period of time, and in particular six

18  months at Fort Dix, New Jersey?

19   A.   Fifth Amendment.

20   Q.   And with regard to Case Number 99 CR

21  00836 did you spend six months at a halfway

22  house?

23   A.   Fifth Amendment.

24   Q.   According to the docket sheets in

25  Case Number 99 CR 836 an indictment issued

116

1         Howard Zukerman

2   against you in that case on September 8, 1999.

3   And my question to you is when did you first

4   learn of that indictment?

5       A.   Fifth Amendment.

6       Q.   Prior to September 8, 1999 do you

7   know whether either you or anyone else on your

8   behalf met with representatives of the United

9   States Attorney's Office concerning possible

10   charges against you?

11       A.   Fifth Amendment.

12       Q.   When did you first learn that you

13   were under investigation for -- strike that.

14         When did you first learn that you

15   were under criminal investigation for tax

16   related matters?

17       A.   Fifth Amendment.

18       Q.   As of the first time that you met

19   with Mr. Lancelotta were you aware that you were

20   under criminal investigation related to tax

21   matters?

22       A.   Fifth Amendment.

23       Q.   As of the time that T. J. Fisher gave

24   you the business cards which are -- I should say

25   the business card that's reflected in Exhibits 8

117

1        Howard Zukerman

2   and 9 were you aware that you were under

3   criminal investigation related to tax matters?

4        A.   Fifth Amendment.

5        Q.   When was the last time that you filed

6   a personal tax return?

7        A.   2001.

8        Q.   And the time prior to that?

9        A.   2000.

10       Q.   And the time prior to that?

11       A.   I filed all years.

12       Q.   In reference to the case of United

13   States V Hundley, in which you are named as a

14   defendant, specifically Case Number 02 CR 441-5,

15   has a trial date been set in that case?

16       A.   Fifth Amendment.

17       Q.   What is the current status of Case 02

18   CR 441-5?

19       A.   Fifth Amendment.

20       Q.   Who is Monty D. Hundley?

21       A.   Fifth Amendment.

22       Q.   Who is Stanley S. Tollman?

23       A.   Fifth Amendment.

24       Q.   Who is Sanford Freedman?  E e m a n.

25   Excuse me.  Start over.

118

| | | |
|---|---|---|
| 1 | | Howard Zukerman |
| 2 | | Who is Sanford Freedman, E E D M A N? |
| 3 | A. | Fifth Amendment. |
| 4 | Q. | Who is James Cutler? |
| 5 | A. | Fifth Amendment. |
| 6 | Q. | Who is Brett G. Tollman? |
| 7 | A. | Fifth Amendment. |
| 8 | Q. | What is Tollman-Hundley Hotels, Inc.? |
| 9 | A. | Fifth Amendment. |
| 10 | Q. | What is the Bryanston Group, Inc. |
| 11 | A. | Fifth Amendment. |
| 12 | Q. | What is the Alpha Hospitality |
| 13 | Corporation? | |
| 14 | A. | Fifth Amendment. |
| 15 | Q. | Have you ever had an association with |
| 16 | Mr. Hundley? | |
| 17 | A. | Fifth Amendment. |
| 18 | Q. | Mr. Tollman? |
| 19 | A. | Fifth Amendment. |
| 20 | Q. | Mr. Freedman? |
| 21 | A. | Fifth Amendment. |
| 22 | Q. | Mr. Cutler? |
| 23 | A. | You want me to cut it short?  Fifth. |
| 24 | Q. | I am just trying to make my record. |
| 25 | A. | Whatever. |

119

1          Howard Zukerman

2     Q.   I am not trying to give you a hard

3   time?

4     A.   Do whatever what you want.  Fifth

5   Amendment.

6          MR. SAMMONS:  Fifth Amendment is the

7     answer.

8     A.   Fifth Amendment.

9     Q.   I mentioned Mr. Tollman.  Have you

10   ever had an association with either Stanley or

11   Brett Tollman.

12     A.   Fifth Amendment.

13     Q.   Have you ever had an association with

14   Tollman-Hundley Hotels, Inc.?

15     A.   Fifth Amendment.

16     Q.   Have you ever had and association

17   with Bryanston Group, Inc.?

18     A.   Fifth Amendment.

19     Q.   Have you ever had an association with

20   Alpha Hospitality Corporation?

21     A.   Fifth Amendment.

22     Q.   What is Alpha Hospitality

23   Corporation?

24     A.   Fifth Amendment.

25     Q.   What is the Prince Hospitality

120

1        Howard Zukerman

2  Marketing Corporation?

3    A.  Fifth Amendment.

4    Q.  Have you ever had an association with

5  that entity?

6    A.  Fifth Amendment.

7    Q.  What is SD Travel, Inc.?

8    A.  Fifth.

9    Q.  Have you ever an association with

10  that entity?

11    A.  Fifth Amendment.

12        Can I ask him something?

13        MR. SAMMONS:  Sure.

14        (Witness confers with counsel.)

15    Q.  What is the BF First Corporation?

16    A.  Fifth Amendment.

17    Q.  Have you ever had an association with

18  the BF First Corporation?

19    A.  Fifth Amendment.

20    Q.  What is the Paternoster Second

21  Holdings Corporation?  And let me spell that.

22  That's P A T E R N O S T E R.

23    A.  Fifth Amendment.

24    Q.  I take it you don't know what that

25  is?  Strike that.

121

1          Howard Zukerman

2          As to what it is and whether you had

3   an association with it you are talking the

4   Fifth?

5       A.   Fifth Amendment.

6       Q.   Let me ask you the same two questions

7   with regard to Chelsea Acquisitions, Inc., what

8   is it?

9       A.   Fifth Amendment.

10      Q.   Have you had and an association with

11  it?

12      A.   Fifth Amendment.

13      Q.   Have you ever done any employment

14  work related -- strike that.

15          Have you ever conducted any

16  professional activities with regard to the

17  Chelsea Acquisition Inc.?

18      A.   Fifth Amendment.

19      Q.   Paternoster Second Holdings, Inc.?

20      A.   Fifth Amendment.

21      Q.   The answer would be the same for SD

22  Travel, Inc., BF First corporation, Alpha

23  Hospitality Corporation, Bryanston Group, Inc.

24  and Tollman-Hundley Hotels, Inc.?

25      A.   Fifth Amendment.

123

1      Howard Zukerman

2      MR. SAMMONS:  Do you have questions?

3      MR. SCHULMAN:  Yes.

4    Q.   First can you tell me whether what's

5   marked as Deposition Exhibit 11 is the most

6   recent indictment in case 02 CR 441-5?

7    A.   Fifth Amendment.

8      MR. SCHULMAN:  That document sets

9    forth in detail a number of allegations

10    among which deals with straw entities, and

11    in particular I believe straw corporate

12    entities.  And I propose to take you through

13    of each of the allegations there in that

14    regard in detail in order to focus in on

15    issues related to straw entities.

16      And perhaps we can save some time by

17    my throwing this out to you and counsel;

18    that is, I understand you are both going to

19    or that the witness will assert the Fifth

20    Amendment privilege as to any questions

21    directly or indirectly related or in any

22    fashion related to the contents of what's in

23    Exhibit number 11.

24      MR. SAMMONS:  Well, let me just say

25    for the record that aside from any privilege

124

1          Howard Zukerman

2    which the witness can address directly, I

3    would object to the line of inquiry as being

4    so far beyond the bounds of relevance and

5    Rule 26 that it would be improper in any

6    event and I would instruct him not to

7    answer.  But aside from that, I believe the

8    witness will assert a privilege as to each

9    of the allegations and I invite him to do

10    so.

11          THE WITNESS:  Do I answer Fifth

12    Amendment now or later?

13          MR. SCHULMAN:  Well I think rather

14    than me taking you through detail by detail

15    in order to go through the straw entities

16    there, I understand you are going to assert

17    a Fifth Amendment to any questions

18    whatsoever with regard to that.

19          THE WITNESS:  Yes, I am going to

20    assert the Fifth Amendment privilege, yes.

21    Q.   Mr. Zukerman, without going through

22    the details of the Exhibit 11, let me just ask

23    you some questions just so that I feel more

24    comfortable about my record being made.

25          Did you have any communications with

125

1          Howard Zukerman

2    Marine Midland Bank or any of its

3    representatives?

4        A.   Fifth Amendment.

5        Q.   Did you have any contact with Marine

6    Midland Bank?

7        A.   Fifth Amendment.

8        Q.   Did you have any communications with

9    National Westminster Bank or any of its

10    representatives?

11          MR. SAMMONS:  I want to object to

12        this line of questioning based on the same

13        objection that I made a few minutes ago

14        regarding relevance.

15          MR. SCHULMAN:  I think it's related to

16        the straw entities, but any event.

17          MR. SAMMONS:  I don't see any

18        relevance to straw entities.  So that was my

19        earlier point.  That although these issues

20        are subject to a privilege they also have

21        nothing to do with this case and I object to

22        the relevance.

23        Q.   The answer to the National Westminster

24    Bank question is Fifth Amendment, is that

25    correct?

126

1          Howard Zukerman

2     A.   Yes.

3     Q.   Did you have any contact -- strike

4   that.

5          Did you have any communications with

6   the National Westminster Bank?

7          MR. SAMMONS:  I have the same

8     objection.

9          MR. SCHULMAN:  I understand you have a

10    continuing objection.

11         MR. SAMMONS:  I have an objection to

12    this line of questioning.

13    A.   Fifth Amendment.

14    Q.   Let me ask the same two questions

15   with regard to First National Bank of Chicago,

16   did you have any contact or communications with

17   that bank?

18    A.   Fifth Amendment.

19    Q.   Did you have any contact or

20   communications with the Chemical Bank?

21    A.   Fifth Amendment.

22    Q.   Did you have any contact or

23   communications with the Bank of America?

24    A.   Fifth Amendment.

25    Q.   Did you in or about and between

127

1          Howard Zukerman

2   January 1993 and June 3, 1993 have conversations

3   with representatives of the Marine Midland Bank

4   in which you falsely represented that a group of

5   European investors was prepared to purchase the

6   deficiency note signed by Monty D. Hundley and

7   Stanley S. Tollman?

8          MR. SAMMONS;  same objection.

9      A.   Fifth Amendment.

10     Q.   Did in or about between July and

11  October 1993 Marine Midland inform you as well

12  as others that Marine Midland would require

13  payment of a 25 percent of the outstanding

14  deficiency?

15         MR. SAMMONS:  Same objection.

16     A.   Fifth Amendment.

17     Q.   Did you on or about October 11, 1993

18  write a memo to Mr. Hundley, that is Money D.

19  Hundley, with a copy to Sanford Freedman in

20  which you noted that you had spoken to

21  representatives of Marine Midland earlier in the

22  day and that the representatives were disturbed

23  that there had been no response to Marine

24  Midland's demand for payment of 25 percent of

25  the outstanding deficiency?

128

1      Howard Zukerman

2      MR. SAMMONS:  Same objection.

3      A.   Fifth Amendment.

4      Q.   Did you also further note that you

5   had informed Marine Midland that no counteroffer

6   had been made because of James Cohen, the

7   purported representative of the European Group,

8   had been out of the country?

9      MR. SAMMONS:  Same objection.

10     A.   Fifth Amendment.

11     Q.   Did you conclude in that October 11,

12   1993 memo or that written on or about that day

13   by noting that Mr. Hundley and Sanford Freedman

14   needed to formulate a response to Marine Midland

15   the following day in order to get feedback to

16   Marine Midland?

17       MR. SAMMONS:  Same objection.

18     A.   Fifth Amendment.

19     Q.   Did you on or about between October

20   11, 1993 and December 1, 1993 falsely represent

21   to a representative of Marine Midland that a

22   foreign entity known as the Westfield Group had

23   offered to pay $1,750,000 to purchase the

24   deficiency note of Stanley S. Tollman and Monty

25   D. Hundley?

129

1      Howard Zukerman

2      MR. SAMMONS: Same objection.

3   A.  Fifth Amendment.

4   Q.  Did you in and about the same time

5  further represent to Marine Midland falsely that

6  the Westfield Group would provide the money for

7  the purchase and that it intended to enter into

8  a partnership with Messrs. Tollman and Hundley

9  for future development and ownership of hotels

10  in the United States?

11      MR. SAMMONS:  Same objection.

12   A.  Fifth Amendment.

13   Q.  Continuing on.  Did you in or about

14  early January 1994 represent to Marine Midland

15  that the entity that would purchase the

16  deficiency note of Messrs. Tollman and Hundley

17  was Paternoster Second Holdings?

18      MR. SAMMONS: Same objection.

19   A.  Fifth Amendment.

20   Q.  Did you also in or about January 1994

21  also represent falsely to Marine Midland that

22  Paternoster was an entity of the Westfield Group

23  and that the same people involved with the

24  Westfield Group were involved with Paternoster?

25      MR. SAMMONS:  Same objection.

130

1          Howard Zukerman

2     A.   Fifth Amendment.

3     Q.   Did you in or about May 1993 along

4   with other representatives of TH Hotels contact

5   and discuss with a representative of First

6   Chicago the purchase of TH Administration and TH

7   Court Corp. notes by a European group of

8   investors?

9          MR. SAMMONS:  Same objection.

10    A.   Fifth Amendment.

11         MR. SAMMONS:  Do we have any more

12   questions, Mr. Schulman?

13         MR. SCHULMAN:  Yes.  One moment.

14   Checking my notes.

15         MR. SAMMONS:  The record should

16   reflect that for the past three or four

17   minutes Mr. Schulman been reading through

18   the document that's been --

19         MR. SCHULMAN:  I am just hitting the

20   highlighted parts of it since this is

21   already highlighted, and any germane ones.

22    Q.   Do you know whether NADIF of

23   Wyndholme, LLC filed any tax returns?

24    A.   I don't know.

25    Q.   Do you know whether they had a tax

131

1          Howard Zukerman

2  identification number?

3      A.  I don't know.

4      Q.  Who had responsibility on behalf of

5  NADIF of Wyndholme, LLC to file tax returns?

6      A.  I don't know.

7      Q.  Who would have been responsible to

8  apply for tax identification number?

9      A.  I don't know.

10     Q.   Does the Internal Revenue Service

11  have any tax liens against you?

12     A.   Fifth Amendment.

13     Q.   In 1999 did the Internal Revenue

14  Service have any tax liens against you?

15         MR. SAMMONS:  Can we consult on the

16         privilege issue?

17         MR. SCHULMAN: Yes, of course.

18         (Witness confers with counsel.)

19     A.   Fifth Amendment.

20         MR. SCHULMAN:  Just bear with me.  I

21         will just be a couple of more minutes.

22     Q.   In case number 99 CR 836, the prior

23  case, did you plead guilty for filing a false

24  tax return for the year 1992 and understating

25  your income by approximately $157,841?

132

1          Howard Zukerman

2     A.    Fifth Amendment.

3          MR. SAMMONS:  Let me ask a foundation

4     question.  Are you representing that that's

5     what a document you have says that he plead

6     guilty to?

7          MR. SCHULMAN:  I am looking right

8     at -- I will show you -- counts 1 through 4

9     which I believe is the indictment.

10          MR. SAMMONS:  You characterized this

11     as an indictment that related to filing a

12     false tax return?  This says that he

13     knowingly and willfully failed to make and

14     file an income tax return.

15          MR. SCHULMAN:  All right.  I stand

16     corrected.

17          MR. SAMMONS:  Okay.  He's not going to

18     testify about it, but I want to make sure

19     that when you read something into the record

20     you have read it in correctly, and you did

21     not read it correctly.

22     Q.   Let's back up.  Let me read it so that

23     we are on the same page.

24          I did misread it.

25          Did you ever fail to file a federal

133

1          Howard Zukerman

2   tax return?

3       A.   Fifth Amendment.

4       Q.   Did you state earlier in the

5   deposition that you filed all previous years'

6   tax returns?

7       A.   Yes.

8          MR. SAMMONS:  Yes.

9       Q.   Did you fail to file a federal tax

10  return for the year 1992 by on or before October

11  15, 1993?

12      A.   Fifth Amendment.

13      Q.   Did you fail to file a tax return for

14  the year 1992 in the amount of $157,841?

15      A.   Fifth Amendment.

16      Q.   Did you for the year 1993, the tax

17  year 1993, fail to file a tax return by its due

18  date of October 17, 1994?

19      A.   Fifth Amendment.

20      Q.   Did you fail to file a tax return for

21  the year 1993 in the amount of $157,769?

22         MR. SAMMONS:  Before the witness

23      answers that question I will inject the same

24      objection that I have made to the prior line

25      of testimony or questioning.  You have asked

134

1          Howard Zukerman

2      about tax returns now for four, five

3      questions.  I have let it pass.  I see no

4      relevance so I object based on that ground.

5      A.   Fifth Amendment.

6      Q.   Let me ask the same questions for

7  1994, the due date of October 16, 1995, and

8  income amount the amount of $153,885?

9          MR. SAMMONS:  Same objection.

10     A.   Fifth Amendment.

11     Q.   For 1995, for the tax year 1995 with

12  a due date of October 15, 1996 in the amount of

13  $149,450?

14         MR. SAMMONS:  Same objection.

15     A.   Fifth Amendment.

16         MR. SCHULMAN:  I think I am done.

17     Let me just check my notes and talk to

18     Mr. Lancelotta.

19         MR. SAMMONS:  You want us to step out?

20         MR. SCHULMAN:  Whatever is easiest.

21         (Discussion off the record.)

22         MR. SCHULMAN:  That's all the

23     questions I have.

24         MR. SAMMONS:  I have a few questions.

25  (Continued on the following page.)