**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **WYNDHOLME VILLAGE, LLC,** *et al.* | * |
| **Plaintiffs and Counterdefendants** | * |
| **v.** | *    **CIVIL ACTION NO.  L01-3809** |
| **NADIF OF WYNDHOLME, LLC,** *et al.* | * |
| **Defendants and Counterplaintiffs** | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In their memorandum in support of motion for summary judgment ("support memorandum"), NADIF of Wyndholme, LLC ("NADIF"), WVI, LLC ("WVI"), John R. "Jack" Quinn ("Quinn"), and Howard "Rusty" Zukerman ("Zukerman"), some of the defendants[1] ("defendants"), analyzed and addressed all of the claims made by Wyndholme Village, LLC ("Wyndholme Village"), James M. Lancelotta ("Lancelotta") and Katherine A. Lancelotta ("Mrs. Lancelotta"), (the "plaintiffs"), in the above case.  By way of brief summary, the defendants explained

➤  That the alleged misrepresentation (essentially that NADIF or North America Doctors Investment Fund <u>would</u> provide construction financing) was flatly refuted by the parties' own written agreement, by Lancelotta's sworn testimony, and by a host of other evidence in the record.

---

[1]       A fifth defendant, Stuart Cornelius ("Neil") Fisher ("Fisher"), has filed a suggestion of bankruptcy, and this action has been stayed as to him.  By affidavit, Fisher resigned his agency on November 19, 2002.  Fisher's affidavit is attached and incorporated by reference as Exhibit 43.  As such, his actions with respect to this litigation have no bearing on defendant NADIF.

▸   That alleged statements regarding the individual defendants' experience in the real estate development business were not actionable.

▸   That the newly filed breach of contract claim could not proceed because there was no breach and, even if there were, the applicable written agreement provided the only remedy for the plaintiffs (that is, a reduction in the defendants' interest in the venture).

▸   That the newly filed claims for equitable remedies must fail because the plaintiffs cannot allege, let alone prove, the elements of each of those claims.

▸   That the damages claim is speculative in the extreme resting, as it does, on projected lost income to Lancelotta, allegedly flowing from projected lost profits from an entity that has no record of profit and losses, that, in turn, allegedly flow from the failure of an enterprise (the Wyndholme Village project) that scores of lenders had rejected as not economically viable.

The support memorandum also predicted that the plaintiffs "would attempt to create a smoke screen using ad hominem attacks on the individual defendants and manufactured assertions of reliance on precontract negotiations."  Support Mem. at 2.  That prediction has come true.  The plaintiffs have now filed an opposition memorandum ("opposition") that consists largely of personal attacks on the individual defendants and arguments to the effect that the parties' written agreement should give way to alleged oral representations that are flatly contradicted by the agreement and other evidence.  Cutting through the smoke, however, one finds that the plaintiffs have chosen not to respond to the bulk of the defendants' points, and where they do respond their attempted responses are legally

insufficient. This reply will focus on two principal deficiencies in the opposition but, before doing so, will make the following brief points:

➤ On the issue of the failure of the controlling August 30 Venture Agreement (unlike an earlier version of the same agreement) to obligate NADIF to provide construction financing, the plaintiffs now claim that Lancelotta and his experienced attorneys concluded that a <u>written</u> obligation was not necessary because the defendants had made <u>oral</u> promises regarding the construction financing during early negotiations. <u>See</u> Opposition at 34. We hope that no further discussion is required to show the absurdity of that argument.

➤ The support memorandum provides a legal analysis of each claim, with case citations and other authority. In contrast, the plaintiffs rely on hyperbole and argument, citing only three cases in their entire brief.

➤ There is nothing in the voluminous record in this case to suggest that the plaintiffs <u>ever</u> took the position that NADIF was obligated, itself, to provide the construction funding for the project until this case was filed, more than two years after the fact. The absence of such evidence is a strong indication that the "NADIF-will-provide-funding" claim is an after-the-fact fabrication created for litigation purposes. And, of course, the plaintiffs ignore the October 2000

Consent Order, in which Wyndholme agrees to repay NADIF and WVI in full.

▸    The August 30 Venture Agreement called for construction financing (wherever it came from) on "market terms." There is no evidence that such terms were available in the lending market; indeed, the refusal of scores of prospective lenders to provide construction financing over a long period of time suggests strongly that "market terms" financing simply was never available.

Aside from these deficiencies, the opposition's reliance on inadmissible evidence and on a new affidavit from Lancelotta require special comment. Those two points are discussed below.

## ARGUMENT

I.    **THE COURT SHOULD GRANT THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE THE EVIDENCE CITED BY THE PLAINTIFFS TO SUPPORT THEIR OPPOSITION TO THE MOTION IS BOTH INADMISSIBLE AND ENTIRELY IRRELEVANT.**

Evidence that would be inadmissible at trial cannot be considered on a motion for summary judgment.  See e.g., Campaign Committee, Inc. v. Congressional Campaign Committee, Inc., 199 F.3d 1365, 1369 (D.C. Cir. 2000); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990); Financial Timing Publications, Inc. v. Compugraphic Corp., 893 F.2d 936, 942 (8th Cir. 1990); see also Federal Rule of Civil Procedure, Rule 56 (e) ("opposing affidavits shall . . . set forth such facts as would be admissible in evidence.") Most of the inflammatory evidence cited by the plaintiffs does not comply with these requirements.

In an apparent attempt to prove that the individual defendants were not successful

developers, as they allegedly claimed to be in the summer of 1999, and to purportedly show that the defendants intended to defraud the plaintiffs, the plaintiffs, in their opposition, have presented the Court with the following "evidence": newspaper articles identifying failed projects, third party fraud claims, and litigation involving Fisher and Quinn; a list of bankruptcies; and lengthy details regarding Zukerman's recent tax problems and Quinn's 1985 misdemeanor conviction.  See Opposition at 14-16, 21, 25-26.  This evidence is both inadmissible and irrelevant, and thus, cannot preclude the entry of summary judgment in favor of the defendants in this case.

First, the allegations contained in the newspaper articles, the discussion of which takes up two pages of the plaintiffs' statement of facts, are clearly hearsay.  The Federal Rules of Evidence, Rules 801 and 802, preclude the use of "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Other federal courts have cited this rule to preclude the use of newspaper articles in support of motions and oppositions to motions for summary judgment.  See De La Cruz v. Dufresne, 533 F. Supp. 145, 149 (D. Nev. 1982); Smith v. Village Garden City, 592 F. Supp. 637, 639 (E.D.N.Y.1984).  As the plaintiffs acknowledge, they seek to use the substance of these articles to prove that the Fisher, Quinn, and Zukerman were not successful and reputable businessmen.  See Opposition at 25-26.  Thus, the plaintiffs seek to use the unsubstantiated claims made in the newspaper articles to prove the truth of their claims, and the evidence is inadmissible for this purpose.

Second, the plaintiffs' allegations regarding the legal troubles of the individual defendants do not satisfy the requirements of Rule 404(b) of the Federal Rules of

Evidence, which precludes the introduction of "bad acts" evidence in certain instances, and states in relevant part, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The Fourth Circuit has further clarified that, in order to satisfy the requirements of the rule, this type of evidence must not only be relevant to an essential element of the claim, but it must also be similar to the act being proved and reliable. See U.S. v. Roland Demingo Queen, 132 F.3d 991, 997 (4th Cir. 1997). For the reasons discussed below, the plaintiffs' allegations do not satisfy these criteria, and it is clear that the plaintiffs' purpose for using this evidence is to convince the Court that the individual defendants are "bad" people.

In 1985, 18 years ago, Quinn apparently pled guilty to a misdemeanor for a charge relating to the completion of a government form and financial statement. See Quinn's Transcript attached to Support Memorandum as Exhibit 30 at 159-61 and Quinn's Answers to Plaintiffs' Interrogatories, Answer No. 11, attached and incorporated by reference as Exhibit 44. Quinn's plea is so remote in time that the plaintiffs cannot even use it to impeach his testimony under Rule 609 of the Federal Rules of Evidence. Furthermore, the facts surrounding Quinn's old conviction bear no similarity to the allegations in this case. The allegations regarding Zukerman's conviction and indictments are even more tenuous. Zukerman's legal troubles surfaced after the signing of the August 30 Venture Agreement when, presumably, the alleged "fraud" in this case was complete. Thus, his legal troubles can have no relevancy to whether Zukerman was successful or reputable at the time that the representations regarding his success and reputation were made. Moreover, Zukerman's conviction was for the failure to file taxes, which obviously bears no similarity to the plaintiffs' current claims that Zukerman

attempted to defraud them in a real estate transaction.[2]

Similarly, the bankruptcies filed by Fisher and Quinn both before and after the alleged fraud took place have no relevance to the plaintiffs' fraud claims, and Rule 404(b) of Federal Rules of Evidence precludes the introduction of the evidence. Obviously, the filing of bankruptcy bears no similarity to the allegation that the individual defendants made false representations regarding their experience and financing. And, to the extent that the bankruptcies were filed after the alleged fraud took place, they also have no bearing on whether Fisher and Quinn were successful and reputable at the time that the alleged representations were made. Moreover, it is disingenuous for the plaintiffs to argue that the Court should infer an intent to defraud from a bankruptcy filing, given that Lancelotta admittedly caused Wyndholme to file bankruptcy twice to avoid foreclosure.

None of these allegations constitutes admissible evidence that the defendants intended to defraud the plaintiffs or that the defendants were not successful and reputable at the time that the alleged representations were made. When these allegations are disregarded, it is clear that the plaintiffs have presented no facts to preclude the entry of summary judgment in favor of the defendants.

## II. THE COURT SHOULD GRANT THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE THE SUPPLEMENTAL AFFIDAVIT SUBMITTED BY PLAINTIFF LANCELOTTA CONFLICTS WITH HIS PRIOR SWORN TESTIMONY.

A party may not avoid summary judgment by submitting a new affidavit that conflicts with prior, sworn testimony. See Barwick v. The Celotex Corp., 736 F.2d 946

---

[2]       As argued in the support memorandum, whether the individual defendants were successful and reputable at the time of the alleged representations is a matter of opinion and thus cannot constitute fraud. See Support Mem. at 25-27.

(4th Cir. 1984); <u>Rohrbough v. Wyeth Laboratories, Inc.</u>, 916 F.2d 970 (4th Cir. 1990).
The new affidavit submitted by plaintiff Lancelotta with his opposition directly conflicts
with his sworn testimony before the Bankruptcy Court, and thus fails as a last ditch effort
to avoid the entry of summary judgment.

In his recently supplied, supplemental affidavit, Lancelotta now states that it was
his "understanding from the beginning that NADIF of Wyndholme, LLC, based on what
Fisher had told [him], did not intend to use its funds to finance the Wyndholme Village
project but, nonetheless, funds of North American Doctors Investments Fund, Inc. would
be available as a last resort."[3]  In direct conflict with his affidavit, Lancelotta testified on
January 11, 2000, at a hearing before the Bankruptcy Court, to the following:

> NADIF never had any intention at all of funding a
> construction loan.  They were the instrument to locate the
> construction loan, not to fund it.
>
> *        *        *
>
> No, I was never under the opinion [NADIF] would issue
> the commitment.

<u>See</u> Exhibit 1 at 232, 234.  Lancelotta went even further when he affirmed his attorney's
comment to the Bankruptcy Court that, with respect to Wyndholme's construction
financing, the August Venture Agreement spoke for itself.  <u>Id</u>. at 234.[4]  This makes it
clear that NADIF's obligation to provide financial is controlled exclusively by the

---

[3]        The "lendor of last resort" allegation is new to the case--no such allegation was made in the
plaintiffs' voluminous amended complaint.  But the new allegation suffers from the same problems as did
the "NADIF-will-lend" argument--the August 30 Venture Agreement makes no mention of such an
obligation. Moreover, North American Doctor's Investment Fund, Inc., is not even a party to the
agreement.  No sophisticated developer, represented by two attorneys, would exclude from the parties'
written agreement a term as important as the source of financing.  Obviously, there was no omission.  There
was no such obligation.

[4]        When queried as to whether NADIF had the obligation to provide the construction loan financing
for Wyndholme, Lancelotta's attorney objected and stated that the August 30 Venture Agreement "speaks
for itself."  <u>Id</u>.  Lancelotta, then, said, "I was going to answer it the same way, Your Honor."  <u>Id</u>.

parties' agreement.

Despite Lancelotta's ridiculous assertions to the contrary, his testimony to the Bankruptcy Court directly addresses the issue of who was to provide financing for Wyndholme and under what terms.   The Court should ignore his current attempts to avoid the obvious meaning and effect of his own sworn testimony.

For the same reason, the Fourth Circuit disregarded the testimony contained in affidavits in <u>Rohrbourgh</u> and <u>Barwick</u>.  In <u>Rohrbough</u>, the plaintiff's expert testified in his deposition that the plaintiff's symptoms appeared consistent with the reactions to an immunization shot repeatedly demonstrated in the relevant literature.  <u>See Rohrbough</u>, 916 F.2d at 974.  The Court then indicated that the expert's testimony would not be enough to establish proximate cause.  <u>Id</u>. at 975.  In response, the expert submitted an affidavit that stated that the immunization shot caused the plaintiff's injuries.  <u>Id</u>.  In <u>Barwick</u>, an asbestos case, the plaintiff submitted an affidavit in opposition to a motion for summary judgment stating that he had used various asbestos materials from several defendants, even though the plaintiff had not identified the use of these materials in two prior depositions that went over his use of asbestos materials at length.  <u>Barwick</u>, 736 F.2d at 951-52, 959-60.  In both instances, the Fourth Circuit found the plaintiffs' last ditch efforts to avoid summary judgment insufficient and disregarded the affidavits.  This Court should do the same and enter summary judgment in favor of the defendants.

<u>**CONCLUSION**</u>

For the reasons discussed in this reply memorandum and in the memorandum in support memorandum, the plaintiffs' claims in this case cannot withstand this Court's scrutiny.  The fraud claim is refuted by the agreement signed by the parties, the illogic of

its premise, and the sworn testimony of the plaintiff, himself.  The newspaper articles that

the plaintiffs seek to use to support the fraud claim are hearsay, and the other "bad acts"

evidence is inadmissible.  The newly minted contract claim is a rehash of the fraud claim

and, in any event, its apparent premise is contrary to the parties' express agreement as to

remedy.  The damage claim is fatally speculative.  The recently filed equitable claims are,

on their face, legally deficient.  And the supplemental affidavit supplied by the plaintiff

contradicts prior sworn testimony as a last ditch effort to avoid judgment.  For all of the

reasons addressed here and in the support memorandum, summary judgment must be

entered in favor of the defendants, and against the plaintiffs.


/s/   *William C. Sammons*
William C. Sammons, Bar No. 02366
Stephen M. Goldberg, Bar No. 01156
  Tydings & Rosenberg LLP
  100 East Pratt Street
  26th Floor
  Baltimore, Maryland  21202
  (410) 752-9700

Attorneys for Defendants and Counterplaintiffs


#355716                                          10