IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WYNDHOLME VILLAGE, LLC, *et al.*, | * | |
| Plaintiffs and Counter-Defendants | * | |
| v. | * | Civil Action No. L01-3809 |
| NADIF OF WYNDHOLME, LLC, *et al.*, | * | |
| Defendants and Counter-Plaintiffs | * | |

\* \* \* \* \* \* \* \* \*

PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
WITH EXHIBITS EXTRACTED FROM NORTH AMERICAN
DOCTORS INVESTMENT FUND, INC. BANKING RECORDS

Plaintiffs, Wyndholme Village, LLC, James Lancelotta and Katherine Lancelotta, by their attorneys, Howard J. Schulman and Schulman and Kaufman, LLC, in response and opposition to Defendants' Motion for Summary Judgment With Exhibits Extracted From North American Doctors Investment Fund Banking Records, state as follows:

Prior to the July 16, 2003 discovery cut-off in this case, Plaintiffs served the Bank of America with a subpoena to produce its records for North American Doctors Investment Fund, Inc. on or before July 15, 2003. Service was effectuated on or about June 11, 2003 for production of the documents. On June 26, 2003, Defendants filed a Motion to Quash Subpoena (Paper No. 65). On July 2, 2003, the Bank joined by sending a written objection to Plaintiffs' counsel pursuant to Fed.R.Civ.Pro. 45(c)(2)(B). On August 25, 2003 (Paper No. 75), the Court denied the Defendants' Motion to Quash

Subpoena issued to Bank of America and granted Plaintiffs' Motion to Compel Bank of America to comply with the subpoena (Paper No. 67).

On October 2, 2003, the Bank of America produced the signature card for the account and the bank statements in the name of North American Doctors Investment Fund, Inc. from June, 1997 through June, 2001. *See* attachments to Affidavit of Counsel filed separately as a lengthy exhibit. On October 28, 2003, the Bank of America produced the individual cancelled checks and deposit slips for the account of North American Doctors Investment Fund, Inc. from approximately January, 1997 through approximately June, 2001. The latter records consist of approximately 1,302 checks and deposit slips.

Attached to the Affidavit of Counsel are the individual monthly bank statements, which are being filed as a lengthy exhibit, pursuant to the ECF rules. Also attached to this lengthy exhibit is the signature card reflecting the signature of Stuart Fisher with a Tax ID number, which corresponds in form to a social security number. Thus, the Tax ID number is a social security number and not an identification number for an on-going corporate business entity with associated tax filings. The signature corresponds to those other signatures that appear throughout the business documents in this case and bankruptcy filings signed by Fisher. The social security number on the signature card does not match Fisher's social security number on file with the United States Bankruptcy

Court for the Northern District of Florida (Case No. 01-00539-GVL1).[1]  In addition to a social security number indicating that this account was, in fact, used as a personal account, checks and bank statements attached to the Affidavit of Plaintiffs' counsel reflect debit card payments for expenditures that clearly appear to be of a personal nature, e.g., Hotel Crillon, Paris, Saks Fifth Avenue, Bruno Magli, Brooks Brothers, Publix Grocery, Louie Vuitton, Neal A. Ahner, M.D., NYU School of Medicine, Glen Optics, The Inn at Little Washington, Tyson's Gallery, Johnston Murphy, Clean Sweep Vacuum, Bed, Bath & Beyond, and The Home Depot.  For example, between June 2, 1999 and September 27, 1999 alone, checks were written on the account of North American Doctors Investment Fund, Inc. in the amount of $1,506 to the Royal Palm Cleaners and $784.44 to Publix, a Florida supermarket.  Attached is a sheet listing each check written on the account from June 2, 1999 to September 27, 1999.  Significantly, the bank statements reflect that at no time did the account ever have anything beginning to approach the $500 million in assets that Fisher told Plaintiffs that North American Doctors Investment Fund, Inc. had.  The account's average ledger balances for the months of July through September, 1999, i.e., times relevant to the alleged fraud, were $5,333.00, $6,263.19 and $13,761.06, respectively.  Attached is a sheet listing the

---

[1] In his Florida bankruptcy filing, Fisher withheld his association with North American Doctors Investment Fund, Inc., from which it may be inferred that North American Doctors Investment Fund, Inc. did not exist or, if it did, it was a sham.  *See* true test copies of Case No. 01-00539 submitted as exhibits attached to Paper No. 54 filed in non-ECF form.

average ledger balances for the account between June, 1997 and May, 2001. Virtually all of the checks written on the account appear to have been signed by Fisher.

Attached to the lengthy exhibit are the deposit slips produced by Bank of America for the account for the period of time from May 7, 1999 through September 27, 1999 (Bates-stamped: 32 of 140 through 58 of 140). Also attached are copies of checks written on the account from June 2, 1999 through September 19, 1999 (Bates-stamped: 430 of 817 through 615 of 817). These documents reflect that the account was used for Fisher's personal affairs, not as a business account of a real estate equity and development fund--let alone a $500 million real estate equity and development fund. This, combined with Fisher's refusal to appear for deposition, is evidence that Fisher's representations about the financial wherewithal of NADIF were false.

                                                                               _____
Howard J. Schulman
Schulman & Kaufman, LLC
One Charles Center, Suite 600
100 N. Charles Street
Baltimore, Maryland 21201
(410) 576-0400
Attorneys for Plaintiffs/Counter-Defendants